## BURKE, Appellant, v. FAY et al., Respondents.

**St. Louis Court of Appeals, January 21, 1908.**

1. **LABOR UNIONS: Extortion.** If a labor union through its agents demands of a contractor a sum of money, as a fine for the employment of non-union men, or to reimburse it for expenses incurred in investigating the contractor's business, and enforces its demand by threatening to withdraw members of the union from his service so that he would be unable to carry out his contracts; the contractor is entitled to recover the sum of money thus obtained from him by coercion.

2. ——: ——: **Jury Question.** But he would not be entitled to recover merely because the unions withdrew their members from his employment unless he could further show that he was unable to employ other workmen and such withdrawal would prevent his carrying out his contracts. In an action brought by a contractor for money paid by him under such coercion, the evidence is examined and held a question for the jury as to whether a sum was paid voluntarily or under duress.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

REVERSED AND REMANDED.

*Perry Post Taylor* for appellant.

(1) The plaintiff made out a *prima-facie* case and the court erred in sustaining defendants' demurrer to the evidence offered by plaintiff. Carew v. Rutherford, 106 Mass. 1; March v. Bricklayers' Union (Conn.), 4 L. R. A. 1198. (2) Procuring money from a man by threats to do harm to his business, is an actionable wrong and such money can be recovered in an action for money had and received. Brewing Co. v. St. Louis, 187 Mo. 367. (3) The action for money had and received will lie whenever "one person obtains the money of another which it is inequitable and unjust for him to retain" and it is not necessary to allege or prove a promise to pay. Banking Co. v. Commission Co., 195 Mo. 289; Richardson v. Drug Co., 92 Mo. App. 520.

*C. J. Anderson* for respondents.

(1)   It is well settled in this country that a person has the right to work for and with whom he pleases; that he may by lawful means secure employment for himself or another; and that what he may legally do alone he may combine with others to do.   Frank v. Herald, 63 N. J. Eq. 443; Protective Assn. v. Cunning, 170 N. Y. 315; Davis v. United Portable Hoisting Engineers, 28 N. Y. App. Div. 396; Coeur D'Alene Consol., etc., Co. v. Miners' Union, 51 Fed. 260; Railroad v. Hanrahan, 121 Fed. 563; Franklin Union No. 4 v. People, 220 Ill. 355.   (2)   A labor union may refuse to work for any particular employer, or withdraw from the service of one whose terms are not satisfactory to them, or whose actions with respect to apprentices are objectionable.   They may obtain employment for the members of their union by the promise of the support of the union and its members by those who employ them.   And they have the right to contract for the securing of certain classes of work to their members, and such contract is not a contravention of public policy.   Shoe Co. v. Saxey, 131 Mo. 212; Atkins v. Fletcher, 65 N. J. Eq. 658; Parker v. Bricklayers' Union, 10 Ohio Dec. 458; Moores v. Bricklayers' Union, 10 Ohio Dec. 665; Curren v. Galen, 152 N. Y. 33; Fireproofing Co. v. Builders' Assn., 145 Fed. 260.

STATEMENT.—The action is to recover $200 as for money had and received.   At the close of plaintiff's case the court gave a peremptory instruction to find for defendants.   A timely motion for new trial proving of no avail, plaintiff appealed.   Plaintiff is a plumbing contractor.   In 1905, he had contracts under way on three houses in the city of St. Louis, and also had contracts in other cities.   His employees were members of the Plumbers' Union.   Defendant Dalton was a member of the Plumbers' Union and its business agent.   De-

fendant Fay was a member of the Gas Fitters' Union and its business agent. Both Unions were affiliated with the Building Trades Council and were working together. Prior to July, 1900, there was a controversy between plaintiff and the Gas Fitters' Union in regard to a gas fitting contract, which plaintiff had sublet and upon which the Gas Fitters' Union refused to allow members of the Union to work. This difficulty was settled by plaintiff signing the following agreement:

"St. Louis, July 10, 1900.

"Agreement between William Burke and Gas Fitters' Union of St. Louis.

"I promise and agree to employ members of the St. Louis Gas Fitters' Union to do all gas fitting both new work and jobbing, that I may have or contract for on this day. I further agree to figure on gas fitting on all buildings on which I figure on the plumbing work, and it is further agreed that I will do all in my power to further the aims and constitution of said Gas Fitters' Union.

"(Signed)    WILLIAM BURKE."

The Plumbers' and Gas Fitters' Unions afterwards became suspicious that plaintiff was not living up to his agreement on contracts he had in Memphis, Tennessee, and Allentown, and directed defendants to make an investigation, which they did, making one trip to Memphis and two to Allentown. The two Unions, through defendants as their agents, demanded $200 of plaintiff. Dalton testified that this demand was to reimburse the unions for expenses incurred by himself and Fay on the trips to Memphis and Allentown.

Plaintiff has no gas fitters in his employ and testified he did not take gas fitting contracts. He also testified that Dalton told him the gas fitters and plumbers had decided to work together and if he did not pay the $200, his plumbers would be called off on all the jobs

he had, both in and outside the city of St. Louis; that at first he refused to pay the $200 and his men were called off on all the jobs he had and his work stopped, and he had to pay the $200 to get the men to go back to work. His evidence indicates the $200 was a fine imposed against him by the Gas Fitters' Union for a real or fancied violation of his agreement of July 10, 1900. Plaintiff testified there was a meeting of the Master Plumbers called to settle the trouble and he met with them, but they could not agree on anything, and he told them to call on him the next morning and he would pay the $200, as he was obliged to get his men back to work; that defendants called the next morning and he paid them $200, taking their receipt therefor. Following is the receipt:

"April 26, 1905.

"Received of William Burke two hundred dollars ($200) for No. 35 and No. 80.

[Signed.]      "CHARLES DALTON,
FRANKLIN C. FAY."

Numbers 35 and 80 are the numbers of the Local Plumbers' and Local Gas Fitters' Unions.

BLAND, P. J. (after stating the facts)—"Any combination, no matter how lawful its origin nor how praiseworthy its objects, which turns aside for the moment from its legitimate pursuits and agrees upon a course of conduct for the sole purpose of inflicting injury upon a third party, becomes at that instant a civil conspiracy, and all damages sustained may be recovered." [1 Eddy on Combinations, sec. 480.]

Carew v. Rutherford, 106 Mass. 1, was an action brought by plaintiff against members of the Journeymen Freestone Cutters' Association, a labor union, to recover back money which had been paid under an apprehension that the defendants would induce his labor-

ers to quit his employment and that he would not be able to supply their places with others so as to carry on his business and fill his contracts. At page 13, the court said: "We have no doubt that a conspiracy against a mechanic, who is under the necessity of employing workmen in order to carry on his business, to obtain a sum of money from him, which he is under no legal liability to pay, by inducing his workmen to leave him, and by deterring others from entering into his employment, or by threatening to do this, so that he is induced to pay the money demanded, under a reasonable apprehension that he cannot carry on his business without yielding to the illegal demand, is an illegal, if not a criminal, conspiracy, that the acts done under it are illegal; and that the money thus obtained may be recovered back, and, if the parties succeed in injuring his business, they are liable to pay all the damage thus done to him. It is a species of annoyance and extortion which the common law has never tolerated."

In March v. Bricklayers' & Plasterers' Union, 4 L. R. A. (N. S.) 1198, March was fined $100 for violating an alleged agreement not to sell or deliver bricks to masons classed as "unfair" by the Union. There was no such agreement, but under an apprehension that a threat by defendant, to stop the erection of a building for which he was furnishing the brick, would be carried out, plaintiff paid the fine of $100. At pages 1201-2, the court said: "The consequences which would flow to the plaintiff from it, if taken, were such as might well excite in him a reasonable apprehension of serious injury. To the pressure thus brought to bear upon him he yielded and paid the sum exacted. There is nothing in the record to relieve this picture. It does not improve it to say that the defendants were seeking to enforce a penalty or to collect damages assessed. They had no right to inflict a penalty upon or assess damages against this man, who owed them no duty through asso-

ciation in the membership of the union, by contract or otherwise. The plaintiff owed them nothing. To overawe him into the payment of something by means of threats of injury in their power to inflict and of such a character as to naturally arouse a reasonable apprehension of serious consequences to him, in the event of his refusal, was an act of the purest extortion, using that word in its widest meaning, by means of threats and intimidation, and in the plainest violation of our statute (Gen. Stat. 1902, section 1296), our decisions, and the universally accepted principles of the common law."

If the $200 was assessed by the two Unions as a fine against plaintiff, or if it was demanded for the purpose of reimbursing the Unions for making an investigation of plaintiff's contracts, then, according to the above authorities, the Unions stepped aside for the moment from their legitimate pursuits for the sole purpose of inflicting injury upon plaintiff, and were guilty of a civil conspiracy; and if plaintiff was coerced to pay the $200 in order to continue his business, he is entitled to recover the damages resulting from the unlawful act and may recover of any one and from two or more of the persons who confederated together to injure him. [1 Eddy on Combinations, sec. 468.] But there is no evidence in the record showing, or tending to show, that plaintiff was compelled to pay the $200, or abandon the performance of his contracts; from aught that appears from the evidence, he might have employed other plumbers to do his work. Those in his employ had the right to quit work at any time and for any cause, or without cause, and plaintiff is not entitled to recover merely because they did quit on the call of their unions. He was not damaged unless the $200 was coerced from him, and he was not coerced, if he could have employed other plumbers to do his work. He made no effort to employ others, but submitted to the demand of the unions and

paid the $200, rather than be put to the inconvenience and delay of hiring other workmen, and herein is his case to be distinguished from the case of Carew v. Rutherford and March v. Bricklayers' & Plasterers' Union, supra, in both of which the plaintiffs were compelled to comply with the demands made upon them by the unions in order to carry out their contracts and prevent serious loss. I do not think there is any substantial evidence that the $200 was paid under duress, and that it should be held the payment was voluntary, but my associates are of a different opinion and think there was sufficient evidence to send that issue to the jury. Wherefore, the judgment is reversed and the cause remanded.