ALBERT HOBBS AND EARL BROWNFIELD, A CO-PARTNERSHIP, DOING BUSINESS AS HOBBS-BROWNFIELD, ROSS LIGHTFOOT, PAT MELTON, RECTOR OWINGS AND KENNETH RENICK, Appellants, v. C. A. POTEET, R. O. JACKSON, HARRY WRIGHT, CECIL BROWN, WALTER GOSNEY, JOE KROLL, CHARLES EDWARDS, JOHN BAKER, ALBERT EDWARDS, CHARLES RITTER AND A. E. WILLIAMSON.—No. 40430.—. 207 S. W. (2d) 501.

Division One, December 8, 1947.

*Gage, Hillix, Shrader, Cowherd & Phelps* for appellants.

*Joseph N. Miniace* and *Marcy K. Brown, Jr.*, for respondents.

154

[501] CONKLING, J.—This injunction action is here on plaintiffs' appeal after the Court below sustained defendants' motion to dismiss plaintiffs' petition praying defendants be enjoined to prevent them from hindering, delaying or interfering with the transportation, receipt, unloading or processing of any milk brought by any of the plaintiffs, or their agents, to the Aines Farm Dairy at Kansas City and the Adams Farm Dairy at Blue Springs, Missouri.

Defendants-respondents are officers and members of Local No. 207, of the Milk Drivers and Dairy Employees Union, which had unionized the employees of the above dairies (and other dairies) in Jackson

County. Following a pre-concerted plan Union members who were dairy employees refused to receive and unload milk brought to the dairies by plaintiffs because the latter were not Union members. Plaintiffs, on their own farms, produced a portion of the milk refused to be unloaded. The remainder of the milk refused plaintiffs had collected from other farms of producers, along their regular milk routes, while acting as contract haulers.

Relief was sought from an alleged conspiracy (claimed to be in violation of R. S. Mo. 1939, Sec. 8301), to limit competition and restrain trade in the transportation, purchase and sale of milk in Kansas City and nearby territory; to create a monopoly in transportation of milk for hire from farmers to processing plants in that area; to prevent and restrain farmers and producers from freely contracting with non-union haulers; to coerce independent [502] truckers and farmers into the Union; and to destroy the property rights in existing contracts of independent contract haulers, such as plaintiffs, who were operating under state and federal authority.

Constitutional questions were raised in the petition and in the answer.

Upon the filing of the petition a temporary restraining order was issued. That order was dissolved at the close of the trial on the merits, when the motion to dismiss the petition was sustained.

By agreement of parties the cause was presented to the Court below on the merits upon an agreed statement of facts, certain depositions, and upon the transcript of the testimony in a companion case, Rogers v. Poteet et al., 355 Mo. 986, 199 S. W. (2d) 378. Reference is made to our opinion in that case for a more complete statement of the basic facts involved here. The instant case was tried and dismissed by the trial court long prior to our ruling in the Rogers case.

The agreed statement of facts in the instant case discloses that on July 10, 1945, the Union through its representatives notified the officials of Aines and Adams Dairies, and the Union employees at such Dairies, that the Union employees at those Dairies would refuse to receive or unload any milk brought in to those Dairies by non-union haulers. Exception was to be made as to milk produced solely on the farm of a farmer-hauler. On July 11, 1945, plaintiffs Hobbs and Brownfield, Lightfoot, Melton, Owings and Renick, none of whom were Union members, brought milk to the plants which they had collected along their milk routes. Defendants Edwards, Baker, Brown, Gosney and Kroll, Union employees at the milk plants, refused to receive or unload it. The milk was returned to the farms and became unfit for human consumption. The temporary restraining order was thereafter issued on July 11, 1945.

On July 12, 1945, defendant R. O. Jackson, the Secretary of the Union (who was also a defendant in Rogers v. Poteet, supra), in the presence of the Assistant Superintendent of the Aines Dairy, told defendant Baker, a Union employee of that Dairy working on the receiving dock, not to refuse to receive any milk from any hauler. Jackson there further stated that if the Dairy received any milk delivered by non-union haulers that the Union would declare the plant "unfair" and that a picket line would be placed around the Dairy. The Assistant Superintendent understood the latter statement of Jackson to mean the cessation of business at the plant, the loss of processed stock on hand and the closing of the plant for an indefinite period. In effect Jackson threatened that unless the Dairy combined with the Union to bring about the very thing which the restraining order was issued to prevent that picketing would result. Jackson advised the manager at the Adams Dairy to the same effect. There was no labor dispute between either Dairy and its employees. Neither plant was picketed.

The Union and its officers here contend, however, that there are additional facts in this case, i. e., in addition to the facts in Rogers v. Poteet, which take this case out of the rule we announced in the Rogers case. The Union contends that these distinguishing facts are that after the issuance of the temporary restraining order: (1) defendants abandoned their "jurisdictional campaign" and substituted therefor what their brief calls "a threat, and only a threat", (2) that the Union ceased directing its efforts to have its members refuse to receive milk from non-union haulers at the Aines and Adams Dairies, (3) that the manager at each Dairy accepted the responsibility of refusing to receive milk from non-union haulers, (4) that on July 14, 1945 the Pure Milk Producers Association passed a certain resolution as the result of which certain member producers soon thereafter ceased to have their milk transported to the processing plants, and that, therefore, the producers themselves are the arch-conspirators.

Assuming to be true the just above set out facts (but not the conclusion and contention that the producers became conspirators), do any or all of such facts, singly or in any combination, remove this case from the rule we announced, on almost identical facts, in Rogers v. Poteet, supra? We think this question must be answered in the negative.

[503] In their brief the Union terms its activities above noted a "jurisdictional campaign". By whatever name such activities may be chosen to be denominated, we ruled in the Rogers case that such activities violated Section 8301. If such activities were only an innocent and innocuous jurisdictional campaign there was no need for the Union to abandon them and, to quote defendants' brief, "substitute therefor a threat". The record before us does not support

the Union's claim of abandonment. Economic sanctions were applied by the Union. On July 12, defendant Jackson advised the management of Aines Dairy that if any milk was received from a non-union hauler "I (Jackson) will have to declare you unfair". The dairy manager, acceding to the pressure of the threat of picketing, declined to permit the Dairy to receive milk from non-union haulers because of the declaration that the Dairy would be "declared unfair" if he failed to respond as the Union wished. The management understood the plant would be picketed and the operations of the plant would cease. The manager of the Adams Dairy, upon being advised by Jackson to the same effect, understood the same thing. He likewise acceded to that threat. Therefore it appears that after the issuance of the restraining order the Union did not abandon the objective it had set out to achieve. It merely changed its methods of operation. After the restraining order the defendants could not continue to refuse to receive milk transported to either Dairy by a non-union hauler, but they could do, and did, an equally effective thing, threaten to place a picket line around the plants. The threat accomplished by indirection the very thing the circuit court had forbidden the Union to do.

The defendants here admit having done the thing the Rogers case enjoined the same Union officials from doing. If we correctly interpret the matters stated in defendants' brief by way of confession and avoidance, it seems to be defendants' position in this Court that prior to the commission of any overt act in furtherance of any conspiracy that the conspiracy was abandoned; and that, therefore, the action of the Court below upon the motion to dismiss was proper. But we are not constrained to that view. The threat and pressure applied by common design to further and to accomplish by indirection that which they had been restrained from doing directly is the very essence of conspiracy. In the threat there was a unity of design and purpose. The threat to picket the plants was but a subterfuge to accomplish the Union's objective without appearing to accept the responsibility of violating the temporary restraining order. We have held that it is contempt to employ a subterfuge or device in an attempt to evade an order which a Court has jurisdiction to enter. State on inf. of Attorney General v. Koon et al., 356 Mo. 284, 201 S. W. (2d) 446, 455. In Lohse Patent Door Co. v. Fuelle et al., 215 Mo. 421, 114 S. W. 997, we said: "The law abhors subterfuges. It lays aside the covering and looks to the actual facts beneath. . . . The law is not to be hoodwinked by colorable pretenses; it looks at truth and reality through whatever disguise it may assume."

Peaceful picketing for *lawful* purposes has long been upheld. Fred Wolferman, Inc., v. Root et al., 356 Mo. 976, 204 S. W. (2d) 733. But here the threat of picketing was not "substituted" for the

overt acts theretofore being committed for a purpose which was lawful. The purpose of the threatened picketing was plainly the continuation of the thing we held in the Rogers case that defendants could not do, and which we there held was conspiracy in violation of Section 8301. The threat was to accomplish such unlawful purpose. That the threat accomplished the unlawful purpose and that the Union did not have to actually establish a picket line around the plants does not change the situation, for the use of subterfuge by the threat accomplished the unlawful purpose. In Lohse Patent Door Co. v. Fuelle, supra, we said: "All the authorities hold that a combination to injure or destroy the trade, business or occupation of another by *threatening* or producing injury to the trade, business or occupation of those who have business relations with him is an unlawful conspiracy regardless of the name by which it is known, and it may be restrained by injunction." (Emphasis ours.)

[504] In Burke v. Fay, 128 Mo. App. 690, a Union by its agents demanded from a contractor a sum of money as a fine for employing non-union men and sought to enforce such demand by *threatening* to withdraw Union members from his service so he could not carry out his contracts. The contractor paid the money. The Court said: "The consequences which would flow to the plaintiff from it, if taken, were such as might well excite in him a reasonable apprehension of serious injury. . . . To overawe him into the payment of something by means of *threats of injury in their power to inflict* and of such character as to naturally arouse a reasonable apprehension of serious consequences to him, in the event of his refusal, was an act of purest extortion, using that word in its widest meaning, by means of threats and intimidation", etc. (Emphasis ours.) Picketing for an unlawful purpose may be enjoined. Fred Wolferman, Inc., v. Root et al., supra, and cases there cited, Empire Storage and Ice Co. v. Giboney et al., 357 Mo. 671, 210 S. W. (2d) 55.

In the case just last cited the defendant truck drivers Union entered into agreements (held to be unlawful under Sec. 8301) with certain ice plants in Kansas City whereunder such plants were to refuse to sell ice to non-union peddlers. The Empire ice plant declined to join in a similar agreement with the truck drivers Union, and when it continued to sell ice to non-union peddlers, was picketed. Great loss of business resulted. In there ruling that such picketing was properly enjoined, we said, in part: "Following the principle laid down in the Rogers case (Rogers v. Poteet, supra) we must hold here that the picketing is unlawful because a combination of union truck drivers involving most of the delivery service transportation in Kansas City comes equally within the condemnation of Section 8301 when it abandons its legitimate sphere of collective bargaining

and other properly related dealings with its employers, and seeks to dictate the terms under which an establishment will be either permitted or denied local transportation service. The defendants have used their local transportation combination improperly to *threaten* and to produce injury and damage through a boycott of plaintiff's business, and incidentally to injure the business of citizens who are regular customers of its cold storage warehouse, by cutting off supplies to and from its customers. This misuse of their power over local transportation is all the more aggravated by the fact plaintiff's plant is fully unionized and there is no labor dispute between plaintiff and its employees, and there is no labor dispute as the term has been construed by court decisions between plaintiff and defendants, nor even any lawful labor grievance between plaintiff and defendants.'' (Emphasis ours.)

As also distinguishing the instant case from the Rogers case, it is urged upon us by defendants that the Producers Association (of which plaintiffs are members) are the conspirators because, eventually, the producers refused to place their raw milk for transportation to Aines and Adams Dairies by non-union haulers, when they (the producers) knew that such milk would be but returned to them unfit for human consumption. The producers had to pay all transportation charges each way whether their milk was received at the processing plant or returned to them. After the producers' milk had been a number of times refused and returned unfit for human consumption, they sought other outlets for that product. Milk is a vital food. The country was at war. Raw milk was in great demand for processing for both domestic use and consumption by the armed forces abroad. The producers had every right and duty to protect so necessary a product. It does not appear, however, that the producers were able to market their product other than as sour milk. Their refusal to have their milk transported to the plants under these circumstances did not make the producers conspirators in fact, nor did it, as defendants here contend, so soil their hands that equity cannot be now done.

We see nothing in the facts of this case which take it out of the rule we announced in Rogers v. Poteet, supra. For the reasons stated in our opinion in that [505] case, the trial court erred in dissolving the temporary restraining order and in sustaining the motion to dismiss plaintiffs' petition. Plaintiffs are entitled to the injunction prayed.

All constitutional questions raised here were fully discussed and ruled in Rogers v. Poteet, supra. There is no need to burden this opinion with a restatement of the conclusions there reached.

Accordingly, the judgment appealed from is reversed and the cause is remanded to the circuit court for the entry of a decree in accord with the views herein expressed. It is so ordered. All concur.