Louis W. DiLeo & others *vs.* Benjamin Daneault.

Worcester.    September 22, 1952. — January 2, 1953.

Present: Qua, C.J., Ronan, Wilkins, Spalding, & Williams, JJ.

*Labor and Labor Union.    Public Policy.    Unlawful Interference.    Equity Jurisdiction*, Labor, Public policy.    *Equity Pleading and Practice*, Report, Labor case, Injunction.

The trial judge in a suit in equity could report the suit to this court upon an agreement and finding of "all the material facts" without decision and without a report of the evidence. [591]

Whatever the right of a labor union of barbers to withdraw a union shop card issued to the proprietor of a barber shop for display therein, the union was not entitled to the aid of a court of equity to get the card back from him where the object of the union in seeking the card was to force him to join the union and pay dues thereto contrary to public policy. [595]

Compelling the proprietor of a union barber shop to join the barbers' union and pay dues thereto would be compelling him to commit an unfair labor practice by contributing "financial . . . support" to the union in violation of G. L. (Ter. Ed.) c. 150A, § 4 (2), inserted by St. 1938, c. 345, § 2, and would be contrary to public policy. [595–596]

A suit in equity by representatives of a labor union of barbers against the proprietor of a union barber shop, wherein the plaintiffs sought to regain possession of a union shop card from the defendant with the object of forcing the defendant to join the union and the defendant sought by counterclaim injunctive relief against acts in furtherance of that object, involved a "labor dispute" within G. L. (Ter. Ed.) c. 149, § 20C (c), as appearing in St. 1950, c. 452, § 2, and want of the preliminary findings required by G. L. (Ter. Ed.) c. 214, § 9A, inserted by St. 1935, c. 407, § 4, as amended, precluded granting of such injunctive relief to the defendant. [597]

Bill in equity, filed in the Superior Court on December 16, 1948.

The suit was reported by *Donnelly,* J.

*Sidney S. Grant,* for the plaintiffs.

*Laurence H. Lougee,* (*Edward C. Maher* with him,) for the defendant.

QUA, C.J. The named plaintiffs as representatives respectively of Local 186 of the Journeymen Barbers, Hairdressers and Cosmetologists' International Union of America, hereinafter called the local, and of the corresponding international organization, hereinafter called the international, bring this suit to compel the redelivery (G. L. [Ter. Ed.] c. 214, § 3 [1], as appearing in St. 1950, c. 387) to the plaintiffs or their authorized representative of two so called union shop cards which had been supplied by the plaintiffs to the defendant as the proprietor of two barber shops in Worcester for display in his shops to identify each shop as a "Union Shop."

The case comes here by report of the trial judge without decision. The evidence is not reported, although the case appears to have been fully tried upon evidence in the Superior Court. The report does, however, contain a detailed statement of facts which the parties have agreed, and the judge has found, to be "all the material facts adduced at the hearing." The case is properly here. *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad,* 169 Mass. 157, 164.

The bill alleges in substance that the shop cards were issued to the defendant upon his agreement that they were to remain the property of the international and were to be delivered up on demand of the local for violation of any of the union "laws" or to the general president-secretary-treasurer or his representative upon call "for any cause"; that the defendant is violating the union "laws" in himself working as a barber without becoming a "non-active" member of the local; and that the local demanded the return of the cards, and the defendant refused to comply. The defendant's answer sets up illegality of the plaintiffs' demand that he, an employer, join an employees' union as a "non-active" member and by counterclaim prays relief by injunction against withdrawal of the shop cards, striking, picket-

ing, or boycotting the defendant to force him to join the plaintiff unions as a "non-active" member.

The decisive facts appear to be these: The defendant is the proprietor of a shop in the Sheraton Hotel and of another shop in the State Mutual Building. At the Sheraton Hotel he himself works as a barber and also employs four union barbers. At the State Mutual Building he employs four union barbers, but does no work himself. The shop cards are small signs about nine and one half by seven and one half inches in size, apparently made of thin metal backed by cardboard or similar material. The face shows the words "Union Shop" in large red letters, a picture of an eagle, and the seal of the international, together with a printed statement that the card is the property of the international and is subject to the conditions set forth on the back. On the back are printed rules governing shop cards, containing references to a shop card agreement to be signed by the proprietor and to the "laws" of the union. For the purposes of this decision it may be assumed that language on the cards themselves and in the shop card agreements signed by the defendant authorized or purported to authorize the local or the international to demand and receive back the shop cards for any violation by the proprietor of any union "laws," whether in existence when the cards were first delivered to the proprietor or adopted afterwards, or "for any other cause." In 1937, when the defendant acquired the card for his Sheraton Hotel (then Hotel Bancroft) shop, the union "laws" contained no requirement that a working proprietor should be a member of the union, but an amendment to the constitution of the international, as of January 1, 1948, provided that such an employer must be a "non-active" member who should "not be entitled to vote or seat" in meetings or to hold any office or to act as delegate to conventions. Thereafter in April, 1948, the defendant acquired his shop in the State Mutual Building, together with a shop card for that shop. Shortly after this suit was brought the constitution of the international was again amended so as to contain provisions that upon removal of a shop card for

violation of the "laws" all members employed in the shop shall immediately leave their employment or become subject to certain penalties; that no shop card shall be displayed unless all persons working in the shop with the tools of the trade are members of the union; and that employers working with the tools of the trade must become "proprietor members" of the local and the international. A "proprietor member" is "entitled to voice and vote" but is ineligible to vote "on matters pertaining to wages, hours of labor, etc." and is ineligible to act as delegate or alternate to conventions. Formerly "non-active" members under the amendment of 1948, and now "proprietor" members under the amendment of 1949, must pay an initiation fee of $10 and dues of $2 a month.

Commencing in June, 1948, apparently pursuant to the 1948 change in the constitution, the defendant was informed by union officials that if he wanted to continue to work at the chair in the Sheraton Hotel he would have to join the union as a "non-active" member or his shop cards would be removed from both shops, and his employees would strike and picket his shops to force him to join the union as a "non-active" member. He refused to join. The shop cards were removed and the employees went on strike at both shops. Union officials threatened to picket the defendant's shop at the Sheraton Hotel unless he joined. Faced with this situation on July 19, 1948, the defendant signed a paper headed "agreement" but saying only, "As of this date I am retiring from active barbering at the chair." The shop cards were returned to the defendant. On September 8 the defendant notified the union that he would return to work on the following day, which he did. The union officials again demanded that he join the union as a "non-active" member and again threatened strikes and picketing and demanded the shop cards because of his refusal to join. The defendant refused to return the cards. There have in fact been no strike and no picketing since this refusal, but on December 16, 1948, this suit was brought. Nevertheless, the constitu-

tion now expressly requires that the members strike if the shop card is removed for violation of the "laws," and they are subject to penalties for failure to do so. They struck when the cards were removed on the former occasion, and there is no assurance that they will not do so again.

The facts agreed and found state that the defendant has abided by all the terms of proposed union contracts that have been submitted to him, except that he has not joined the union as a "non-active" member; that there has been and is no dispute between the defendant and the union or his employees in regard to wages, hours, prices, or working conditions; that the union seeks the return of the defendant's shop cards because he refused to join the union as a "non-active" member during 1948 and as a "proprietor member" since January 1, 1949, in view of the fact that he works as a barber in one of his shops; and that "The union is endeavoring to force Daneault to join the union as a proprietor member by removal of his shop cards."

The position of the plaintiffs in substance is that the shop cards and all that they signify are their property and that they can demand them at any time for any reason satisfactory to them regardless of the purposes for which the demand is made or of the consequences to the defendant, and that the defendant by accepting the cards with the conditions printed upon them and signing the shop card agreements consented to this and agreed to be bound by all the "laws" of the union, whatever they might be, whether then existing or thereafter adopted, including the rule that working barbers must accept a limited membership in the union of their own employees and must pay dues to that union.

Undoubtedly the union has rights in the shop cards, although in considering such rights it must be remembered always that the cards themselves, treated as tangible property, may fairly be said to have no value. Such value as they have is as symbols only and exists because of the effect the cards may have in attracting to the shops displaying them the patronage of union men in general and their sympathizers and the effect the withdrawal of the cards may

have in driving away such patronage. The attempt to determine the rights of this union in such shop cards has given rise to acute differences of judicial opinion in cases decided by other courts. *Riviello* v. *Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local No. 148,* 88 Cal. App. (2d) 499, at pages 506–507; *S. C.* 109 Cal. App. (2d) 123. *Rainwater* v. *Trimble,* 207 Ga. 306. *Foutts* v. *Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local No. 105,* 155 Ohio St. 573.

In our opinion, however, the present case does not call for any determination of the right of the union in general to withdraw its shop cards, whether springing from agreement or otherwise. The union is here seeking relief in a court of equity with respect to property the importance of which depends wholly upon its symbolism. The union desires possession of the cards, not because it wishes to make some use of them or to sell them, but because of what they symbolize and because of the effect it anticipates from the withdrawal of them. The question of the right of the union to the aid of a court of equity to obtain possession of the cards cannot be divorced from the context of the case and cannot be considered apart from the circumstances which have given rise to the controversy. The union desires the cards because it wishes to compel the defendant to join the union and to contribute to its support. It brings this suit as a step in the process of compulsion. If the object sought is contrary to the public policy of the Commonwealth a court of equity will not lend its aid in accomplishing that object, whatever agreement the defendant may have made. *Duane* v. *Merchants Legal Stamp Co.* 227 Mass. 466, 468–469. *Joe Gouy Shong* v. *Joe Chew Shee,* 254 Mass. 366, 370. *Fouquette* v. *Millette,* 310 Mass. 351. *Tocci* v. *Lembo,* 325 Mass. 707, 709–711.

We cannot avoid the conclusion that the object of compelling the defendant to join the union is contrary to the public policy of the Commonwealth as expressed in its statutory law. It is provided by G. L. (Ter. Ed.) c. 150A,

§ 4 (2), inserted by St. 1938, c. 345, § 2, that it shall be an unfair labor practice for an employer to "contribute financial or other support" to a labor organization. We can see no escape from the proposition that to pay dues to a labor organization is to contribute financial support to it. This has been held in Wisconsin, where a similar statute was in force. *Wisconsin Employment Relations Board* v. *Journeymen Barbers, Hairdressers & Cosmetologists International Union of America, Local 379B*, 256 Wis. 77, 83–86. This provision of statute establishes the policy of the Commonwealth which the court must recognize in any litigation before it. *R. H. White Co.* v. *Murphy*, 310 Mass. 510, 518. It is unnecessary to consider whether the object of compelling a working employer to join a union of his own employees is contrary to public policy for any other reasons. Neither is it necessary in this case to assign any special significance to the fact that the union membership offered is only a sort of second class membership without full privileges. See *Simon* v. *Journeymen Barbers, Hairdressers, Cosmetologists & Proprietors International Union of America, Local No. 315*, 21 N. J. Super. 65.

It is true that in this case the defendant could have ceased working and retained his cards; but the purpose of the union, as appears from the facts agreed, was to make him a member, not to prevent him from working. Moreover, it is common knowledge that, in this Commonwealth at least, barber shops are generally small enterprises employing only a few men. In a great many, if not in most, instances, if the employer could not work, his shop would be closed. The union is therefore putting severe pressure upon an employer in the position of the defendant to compel him to join the union and to pay dues and thereby to engage in an unfair labor practice. To exert such pressure with its probable consequences must be deemed inconsistent with declared public policy. Whether by itself alone the exercise of pressure solely to compel an employer not to work with his own hands would be contrary to public policy has never been decided in this Commonwealth and

need not be decided now. See *Saveall* v. *Demers*, 322 Mass. 70.

This case is in no way governed by *Thorn* v. *Foy*, 328 Mass. 337. In that case the plaintiff had voluntarily agreed not to work, and the object of the union was to compel him to keep his agreement. In the case at bar the defendant has not agreed not to work. The paper headed "Agreement" is merely an informal statement that he is retiring from active barbering at the chair. It contains no promise for the future. So far as appears the union promised nothing, although it did in fact return the cards to the defendant. Whatever arrangement was made at that time was an arrangement purely at will on both sides. Furthermore, in this case the union's demand for the shop cards is not made for the purpose of compelling the defendant not to work but is made to compel him to join the union.

The grounds of this decision are such that the fact that the union had recorded its shop card as a so called trade mark is immaterial. See G. L. (Ter. Ed.) c. 110, § 8; *Tracy* v. *Banker*, 170 Mass. 266.

No relief can be granted on the defendant's counterclaim. The only relief which is sought or which would be appropriate would be by way of injunction. The case involves or grows out of a "labor dispute" within the broad definition of G. L. (Ter. Ed.) c. 149, § 20C (c), as appearing in St. 1950, c. 452, § 2, which under § 7 is to be "construed liberally," and the preliminary findings required in such cases by G. L. (Ter. Ed.) c. 214, § 9A, as inserted by St. 1935, c. 407, § 4,[1] have not been made. Whether if the required findings had been made relief would be granted need not be decided.

The result is that a final decree must be entered dismissing the bill and the counterclaim.

*So ordered.*

---

[1] Amended in respects not here material by St. 1950, c. 452, § 3.