O. H. KERKEMEYER, Ben H. Gist, Earl C. Tolbert, L. Guy Scroggins, Henry Geers, W. H. Jones, A. B. Craig and Ray D. Hough, Appellants,

v.

S. R. MIDKIFF, George Lowe, and Otis McCurdy and all other members of Journeymen Barbers, International Union of America, Local No. 191, Respondents.

No. 45189.

Supreme Court of Missouri.

En Banc.

March 11, 1957.

**410**

Turner White, Chinn & White, Springfield, for appellants.

Neale, Newman, Bradshaw, Freeman & Neale, F. B. Freeman, Donald J. Hoy, Springfield, for respondent.

STOCKARD, Commissioner.

Plaintiffs are the respective owners and operators of eight separate barbershops in Springfield, Missouri, and this action is brought against the three named defendants in their capacity as officers, members and representatives of a class of persons composed of the members of Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, Local No. 191, A. F. of L. The defendants will hereafter be referred to as "Local 191" or the "union." Plaintiffs seek a judicial determination of their right to display a "union shop card" in their respective barbershops, and also seek to enjoin the union from removing the union shop card and from taking other action to compel the plaintiffs to join the union.

The trial court entered judgment on the pleadings for the union, and this was affirmed by the Springfield Court of Appeals with one judge dissenting. Kerkemeyer v. Midkiff, Mo.App., 281 S.W.2d 516. That court then transferred the cause here pursuant to the provisions of the Missouri Constitution (1945), § 10, Article V, V.A.M.S., because of the general interest and importance of the questions involved; therefore, it is here as though upon original appeal. Both parties filed motions for judgment on the pleadings, and for the purpose of the motions each party thereby admitted the facts well pleaded in the pleadings of the other. Turner v. Browne, 351 Mo. 541, 173 S.W. 2d 868 [1].

Each plaintiff is the proprietor of a barbershop in which he works doing regular barbering service as well as administrative duties and in which he employs one or more union barbers who are members of Local 191. Each plaintiff has entered into a contract with Local 191 which governs working conditions and compensation, and which also provides for what is generally known as a "union shop" in that all barbers employed must be or become members of the union, but there is no provision in this contract by which plaintiffs agree to or are required to become members of the union.

In addition to the contract above referred to, each plaintiff, at various times prior to 1954, entered into an additional "written agreement" with Local 191 in which each agreed, in consideration of being allowed to display the "union shop card," that he would "comply with all the conditions imposed in the 'Rules Governing Shop Cards' which are printed on the back of said Union Shop Card and any subsequent rules." The terms of this second agreement are not set forth in the transcript, and only a part of the said "Rules

Governing Shop Cards" is contained therein, that part being as follows:

" * * * the person or persons displaying the Shop Card shall specifically agree:

"(a) To abide by the laws of the J. B. H. C. I. U. of A. governing Shop Cards and such laws as may be made in the future for the proper government of the same.

"(b) To abide by the laws of the local union, now and in the future, with reference to prices, hours, wages, etc.

"(c) To peaceably give up said Shop Card on demand of the local union or local executive board, through its duly appointed representative, for the violation of any local or International laws.

"(d) To peaceably give up said Shop Card * * * for any cause, when called upon to do so."

There is no explanation of what constitutes the "laws of the J. B. H. C. I. U. of A. governing Shop Cards" but we shall assume that this refers to the constitution of the parent organization of Local 191 which is a part of the transcript. When the plaintiffs, except Henry Geers, acquired the union shop cards for their respective establishments the union "laws" contained no requirement that a working proprietor must be a member of the union, but an amendment to the constitution as of January 1, 1948, provided that such an employer must be a nonactive member who should not be entitled to vote or a seat in union meetings or to hold any office. The constitution was again amended effective January 1, 1954, subsequent to the time that all plaintiffs acquired their respective union shop cards, to require that a proprietor who works with the "tools of the trade" must be a member of the union in good standing, and that no union shop card should be displayed in a barbershop unless

all persons working therein with the tools of the trade are members of the union. The "laws" do not purport to require that a proprietor who does no work with the tools of the trade join the union. This second amendment provides that all members are entitled to "equal rights of membership, including the right to vote and hold office." The constitution also provides that upon the removal of a union shop card for violation of the "laws" of the union all union members employed in the shop must immediately leave their employment. Failure to comply subjects the employee to suspension of his union membership and to other severe penalties.

Plaintiffs all belong to an association of master barbers, an employers' association, and the "laws" of Local 191 forbid any of its members from belonging to such an organization. If plaintiffs join Local 191 they will lose their accrued rights in the association of master barbers which include sickness and death benefits.

For many years each of the plaintiffs has operated his barbershop as a "union shop" and has displayed the union shop card. There is no dispute between plaintiffs and Local 191, or between plaintiffs and their employees concerning wages, hours or conditions of employment. However, because plaintiffs work in their own barbershops with the "tools of the trade," Local 191 has demanded that each plaintiff join the union or surrender the union shop card. Plaintiffs have complied with every term of the contract covering working conditions and with all the "laws" of the union except that they refuse to join Local 191. They have brought this suit seeking a judicial declaration of their right to display the union shop card, and they pray for an injunction enjoining Local 191 and its agents from removing the cards for the reason that they refuse to join Local 191 and from causing a strike of plaintiffs' employees for the same reason. Unless plaintiffs are entitled to the relief they hereby seek, they are each faced with the choice of joining Local 191 and losing

the benefits accrued to them by membership in the employers' association, or doing no work in their own barbershop with the tools of the trade. The alternative is to have a strike by their employees.

The position of Local 191, in substance, is that the shop cards are its property and that it can demand and remove the cards at any time for any reason satisfactory to it regardless of the purposes for which the demand is made or of the consequences to the plaintiffs, and that the plaintiffs, by accepting the cards with the conditions printed on the back thereof and signing the shop card agreements consented to this and agreed to be bound by all the "laws" of the union, whatever they might be, whether then existing or thereafter adopted, including the rule that proprietors who work with barbering tools must join the union and be subject to all its "laws." However, we believe that the determination of this case turns on questions other than the property right in the shop cards. The union has demanded the cards from the plaintiffs, not because it wishes to make some other use or disposition of them, but because of what they symbolize, and because by the threat of withdrawal of the cards, with the knowledge of the plaintiffs that a strike will follow a withdrawal, it is anticipated that plaintiffs will be coerced either into doing no work in their own barbershops or into joining Local 191 and contributing financially to its support. Local 191 admits that the financial aspect is present because in its brief it is asserted that the purpose of the union in amending its constitution to require that those proprietors who work with tools of the trade join the union was that "employer-barbers should also pay." The basic issue in this case then is not the property interest of the union in the shop cards, or the purported right of the union in general to withdraw its shop cards, whether based on agreement or otherwise, but whether the union may use this or any other type of coercion or economic pressure against the plaintiffs as employers to compel them against their wishes to stop working with the tools of the trade in their own barbershops or to join Local 191 and be subject to its "laws" and contribute financially to its support.

Forms of economic pressure by a union against an employer, including the threat of a strike, are permissible where the object sought to be attained is reasonably related to a legitimate interest of organized labor, and where such concerted action is carried out peaceably and honestly. Fred Wolferman, Inc. v. Root, 356 Mo. 976, 204 S.W.2d 733 [2], 174 A.L.R. 585, certiorari denied 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122; Hobbs v. Poteet, 357 Mo. 152, 207 S.W.2d 501 [2]. But if the objective is unlawful or contrary to the public policy of this state, and would result in damage for which there is not an adequate remedy at law, a court of equity may enjoin such activity, Fred Wolferman, Inc. v. Root, supra [2], and it will decline its aid in accomplishing that objective, regardless of the purported agreement the defendants may claim to have with the plaintiffs. Di Leo v. Daneault, 329 Mass. 590, 109 N.E.2d 824 [2]. In Dorchy v. State of Kansas, 272 U.S. 306, 311, 47 S.Ct. 86, 87, 71 L.Ed. 248, 269, Mr. Justice Brandeis, speaking for the court, said that "a strike may be illegal because of its purpose". See annotation, Purposes for which strike may lawfully be called, 71 L. Ed. 248. Likewise, the threat of a strike as in this case may be illegal because of its purpose, and that is the question we have here.

We shall consider first the objective of the union that the plaintiffs stop working with the tools of the trade and perform only administrative duties. Local 191 denies this is an objective and states: "There can be no doubt that the public policy of this state favors the right of a man to work with his own hands. The respondent union would be the first to defend this basic right, * * *." But regardless of the union's denial, the sum and substance

of the union's demand on the plaintiffs, in view of the provisions of its "laws," is that each plaintiff must stop working with the tools of the trade in his own place of business *or* he must join the union. Of course, if the plaintiffs do not join the union, and do stop working with the tools of the trade, then by reason of the "union shop" agreement it will be necessary for each to hire a union member to do that work which he had been doing or permit the work not to be done in his barbershop.

In Heath v. Motion Picture Machine Operators Union No. 170, Mo.Sup., 290 S.W.2d 152, 158, this court held that the exertion of economic pressure on an owner of a business by means of picketing to compel him not to operate a projection machine in his own business and to hire a union member to do that work or permit the work to remain undone was violative of the policy of this state, and for that reason the objective was unlawful. Here the union is exerting economic pressure on plaintiffs by means of a threatened strike for exactly the same objective. There is a factual difference between this and the Heath case, subsequently discussed, but disregarding for the present that difference, insofar as the demand of the union is directed to the objective that plaintiffs cease working in their own places of business with their own hands and hire a member of the union to do that work if it is to be done at all, we see no material distinction in principle between this and the Heath case. See also annotation, Purposes for which strike may lawfully be called, 71 L.Ed. 248, at page 257. We are aware that the United States Supreme Court has said that "[u]nions obviously are concerned not to have union standards undermined by non-union shops", and that this "interest penetrates into self-employer shops." International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 309, v. Hanke, 339 U.S. 470, 475, 70 S.Ct. 773, 776, 94 L.Ed. 995, 1002, 13 A.L.R.2d 631, 636. However,

the plaintiffs here operate union shops, hire no employees other than members of Local 191 and each plaintiff has entered into a contract with Local 191 which provides for the conditions of employment including the minimum charges to be made for all services whether performed by union members *or by the proprietor* in or outside of the barbershop. Therefore, under the circumstances of this case, there is no possibility that plaintiffs can "undermine" union standards or compete unfairly with any union member by the performance of barbering services.

The factual distinction above referred to between this and the Heath case is that there the proprietor who operated the projection machine was not eligible to join the union, while here plaintiffs are eligible to join, and the union in effect has given the plaintiffs the choice of stopping work or joining the union. As we understand the Heath case, the "element of unfairness inherent in the proposition that the union's policy may not be satisfied by the owner-operator joining the union" was a factor or "relevant matter" considered, among others, in arriving at the result there reached. It was not the deciding factor, and there is nothing in that opinion to the effect that the objective of the union would necessarily have been lawful, in view of the other factors, if the owner-operator could have become a member of the union. The dissent in the Heath case expressed the view that the fact that an owner-operator may or may not join the union should not be a relevant matter. Without expressing approval or disapproval of the view that this fact is a relevant matter that may be considered, we shall in this case give consideration to the fact that plaintiffs are eligible to join Local 191, and then consider the effect of that membership.

Local 191 is the recognized collective bargaining agent for all the employees of the plaintiffs, and it now has a contract on behalf of its members with each plain-

tiff concerning conditions of employment, including guaranteed weekly wages, hours of work, and the percentage of gross receipts to be paid to the employees as compensation. This contract is for one year, and of course its terms are subject to change by the agreement of the parties when a new contract for a new term is negotiated. This is the process of collective bargaining, and the Supreme Court of the United States has quoted with approval the statement that to permit the employer to sit on both sides of the bargaining table makes a sham of the process. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 303 U.S. 261, 268, 58 S.Ct. 571, 575, 82 L.Ed. 831, 836, 115 A.L.R. 307, 312. The process is no less a sham when the union sits on both sides of the bargaining table. The right of collective bargaining is a "fundamental or natural right", and statutes, where they exist, merely affirm and do not create this right. 56 C.J.S. Master and Servant, § 28(20). The benefits of this right necessarily extend to the employer as well as to the union, and it is axiomatic that this right of collective bargaining becomes a farce if the freedom of either party to promote and advance his own interest is subject to the consent and approval of his adversary.

If plaintiffs join Local 191 they become bound, as members, by all of its "laws" which include the following: Any member who shall bring any civil action of any nature against the union shall "stand suspended"; any member who shall oppose directly or indirectly any legislation endorsed by the union may be tried by a union tribunal and fined not less than $25 and not more than $500; and any member who shall "directly or indirectly" operate against the interests of the union shall be subject to trial before a union tribunal and to be fined and have his membership annulled until the fine is paid. By these and other "laws" the plaintiffs, in their capacity as employers, would be completely subservient to every demand of the union,

and these "laws" would completely nullify every right presumably arising from their present or any future contracts with the union. We accept as a fact, by reason of this case coming to us as it has on motions for judgments on the pleadings, that if plaintiffs, as members of the union, should collectively or singly oppose any position of Local 191 concerning the terms of the contracts between the union and the employers pertaining to conditions of employment they would "directly," and if not directly then certainly "indirectly," be operating against the interests of Local 191. To deny this is to assert that Local 191 has no interest in negotiating a contract for its members as favorable as the circumstances would justify. While it is true that the plaintiffs and Local 191 may have matters of common interest, such as uniform hours of work and minimum charges for services, the plaintiffs and Local 191 are also adversaries in many respects pertaining to the interests of each. Accepting this fact, as we must, the above provisions of the "laws" of the union result in the plaintiffs being forced to negotiate wages and other conditions of employment with their adversary, Local 191, and at the same time being subject to disciplinary action by their adversary if in protecting their interest as employers they oppose the interest of their adversary in the very matters that are the subject of negotiation. The narrow question then in this case is whether or not it is contrary to the public policy of this state for a labor union to exert economic pressure to compel an employer to join the union of his employees when the result is for the union to obtain the right to sit on both sides of the bargaining table in negotiating with the employer the terms of contracts covering conditions of employment. We are convinced that this is the result of the union's demand, and accepting the indication in the Heath case that the fact that the plaintiffs may join the union is a "relevant matter" to be considered in determining the lawfulness of the objective of the union, we conclude that

the objective under the circumstances of this case is unlawful.

It may be argued that the employer-members of the union may express their views in the union meetings, but we must assume that the policy and position of the union is determined by majority vote or such other vote as is provided by its rules. As long as the employer-members are subject to being outvoted they are bound by the result reached. It may also be contended that it is possible for the employer-members to outnumber the employee-members. But in such event the tables are then reversed and it is the employer who is sitting on both sides of the bargaining table. In either event the evil is equally as great and equally as destructive to the process of collective bargaining.

■■ It is for the individual states to determine the public policy in matters of this nature and the public policy is to be found in the constitution, acts of the legislature, and the decisions of the courts. Building Service Employees International, Union Local 262 v. Gazzam, 339 U.S. 532, 537, 70 S.Ct. 784, 787, 94 L.Ed. 1045, 1050; International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local 309 v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995. In determining what is or is not against public policy, the common law and the decisions of other states may be resorted to as in determining any other rule of substantive law. State ex rel. Smith v. Bowman, 184 Mo.App. 549, 170 S.W. 700. In the Hanke case the Supreme Court of the State of Washington enjoined a union from picketing garage men who were self-employers, and in upholding that result, Mr. Justice Frankfurter expressed approval of the statement in the dissenting opinion of Mr. Justice Brandeis in Liggett Co. v. Lee, 288 U.S. 517, 580, 53 S.Ct. 481, 502, 77 L.Ed. 929, 961, 85 A.L.R. 699, 732, that, "There is a widespread belief * * * that the true prosperity of our past came not from big business, but through the courage, the energy, and the resourcefulness of small men; * * * and that only through participation by the many in the responsibilities and determinations of business can Americans secure the moral and intellectual development which is essential to the maintenance of liberty." We can conceive of no surer way of eliminating the small independent business man from the economic scene than to compel him to stop working with his own hands in his own business or to be completely subservient to his adversaries in matters pertaining to his ability to compete in the economic struggle for existence.

A question closely analogous to the one here has received the attention of the Supreme Court of California in Safeway Stores, Inc. v. Retail Clerks International Association, 41 Cal.2d 567, 261 P.2d 721, 726. The union picketed the Safeway Stores to compel the organization of store managers. It was there said: "It is eminently proper that management supervisors, the store managers in this case, be kept free from the divided loyalty that would be engendered by compulsory membership in the defendant local unions. Under the law an employer may not demand that his representatives sit in the inner councils of labor and thus be placed in the position of exerting his influence in directing labor's policies and activities. If such an objective were recognized and were accomplished collective bargaining would be in confusion and indeed futile. By the same token an employee union may not insist that a representative of the employer be required to participate in its deliberations under union rules and thus divide his loyalty." Certainly if the union cannot properly insist that an employer representative join the union, it should not be entitled to insist that the employer himself join the union.

Local 191 relies principally upon the cases of Foutts v. Journeymen Barbers, Hairdressers & Cosmetologists' International Union of America, Local No. 105, 155 Ohio St. 573, 99 N.E.2d 782; Rain-

water v. Trimble, 207 Ga. 306, 61 S.E.2d 420; and Head v. Local Union No. 83, Journeymen Barbers, 262 Ala. 84, 77 So.2d 363. In considering these cases it is necessary first to mention the case of Riviello v. Journeymen Barbers, Hairdressers and Cosmetologists' International Union of America, Local No. 148, 88 Cal.App.2d 499, 199 P.2d 400. Riviello and others, owners and operators of a barbershop who employed only union barbers, sought an injunction to restrain a local union of the same parent organization here involved from withdrawing the union card from plaintiffs' barbershop, from causing a strike of plaintiffs' employees, and from picketing plaintiffs' shop as threatened unless plaintiffs became members of the union. When the issues in that case arose the union constitution provided that employer-barbers should become members of the union but should have no vote or seat in the union meetings. The requested injunction was issued and it was held that the threat of a strike and of picketing was for an unlawful objective because the only membership offered to the plaintiffs was a "sterile" membership. The Foutts and Rainwater cases also arose under the same set of facts. However, in these latter two cases the result reached was opposite to that in the Riviello case. In the decision in the Foutts case the majority opinion accepted at face value the contention of the union that the union shop card constituted no more than a public notice that the union approved and recommended the services of another, and that the union could withdraw its recommendation at any time for any or no reason. As previously stated we think the issue goes much deeper. The decision in the Rainwater case turned solely on the proposition that the employer-barbers had agreed that they would be bound by all rules then in existence or made in the future, and, the union having amended its rules to require the employer-barbers to join, it was entitled to have performance of its contract. The Head case arose after the present provisions of the union "laws"

were adopted, but it followed the theory of the Foutts and Rainwater cases. None of these cases considered what we regard to be the principal issue of the case, and therefore we do not consider them persuasive.

In Journeymen Barbers, Hairdressers, Cosmetologists & Proprietors International Union of America, Local Union No. 205 v. Industrial Commission, 128 Colo. 121, 260 P.2d 941, 947, 42 A.L.R.2d 700, it was held that the demand of the union that employer-barbers not work with the tools of the trade or join the union was unlawful and contrary to public policy because, among other reasons, to require the owner and operator of a business to become a limited or nonactive member of his employees' union is discriminatory and " 'in violation of the cardinal principle of collective bargaining.' " It was specifically stated that the union did not have the right to withdraw the union shop card for the reason that the employer refused to agree to a rule in violation of the public policy of the state. In Wisconsin Employment Relations Board v. Journeymen Barbers, Hairdressers & Cosmetologists International Union of America, Local 379B, 256 Wis. 77, 39 N.W.2d 725, and in Di Leo v. Daneault, 329 Mass. 590, 109 N.E.2d 824, it was held that a demand of the union similar to that in this case was unlawful because a state statute forbade an employer from contributing financial support to a union. These three cases were all ruled on the question of whether the demand of the union was contrary to the public policy of the state as declared by the statutes, but as previously stated the public policy of a state in matters of this nature may be expressed other than by statutory provision.

■ Local 191 also contends that the continued display by plaintiffs of the union shop cards is a violation of Section 417.060 RSMo 1949, V.A.M.S., which provides, among other things, that a person who knowingly and willfully displays a union

card "without a contract with such union for the use of its union card" or who displays the card in his place of business "wherein he does not employ members of such union" shall be guilty of a misdemeanor. Here the plaintiffs have contracts for the display of the card and they employ only members of the union.

 We cannot escape the conclusion, and we hold, that it is contrary to the public policy of this state, and therefore an unlawful labor objective, for a labor union to exert economic pressure on an employer to compel him to join a union of his employees when to do so makes him subject to union "laws" which destroy or substantially impair his right to assert and protect those interests *essential to his status as an employer* in negotiations with the union concerning the terms and conditions of employment of his employees. In the Riviello case the demand of the union was unlawful because compliance therewith would result in the employer becoming a "sterile" member of the union. Here the demand is unlawful because compliance therewith will result in the rights of the plaintiffs as employers becoming "sterile."

The trial court erred in dismissing plaintiffs' petition and granting affirmative relief to Local 191. The plaintiffs are entitled to the injunctive relief requested insofar as it pertains to the withdrawal of the union shop cards, or threatening a strike of plaintiffs' employees, for the purpose of compelling the individual plaintiffs to join Local 191 or to cease performing work with their own hands in their own places of business.

The judgment is reversed and the cause remanded for further proceedings in accord with the views here expressed.

BOHLING and BARRETT, CC., concur.

**PER CURIAM.**

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All concur.

Adopted as the opinion of the Court en Banc.

All concur.