FRED WOLFERMAN, INC., a Corporation, Appellant, v. HOWARD P. ROOT, and RAY THOMAS, Individually, and as Business Agent and President, respectively, and as Representative Members of AMALGAMATED MEAT CUTTERS and BUTCHER WORKMEN OF AMERICA, LOCAL UNION No. 576, and Other Unnamed Members of Said Union.—No. 40366.—204 S. W. (2d) 733.

Court en Banc, September 8, 1947.

Rehearing Denied, October 13, 1947.

*R. B. Caldwell, Blatchford Downing, Stanley Garrity* and *John W. Oliver* for appellants.

*Clif Langsdale* for respondents.

DOUGLAS, J.—Fred Wolferman, Inc., the plaintiff, operates four retail grocery and meat markets in Kansas City. It employs nineteen butchers, at least three of whom are union members. Plaintiff's other employees, including the truck drivers, belong to unions. Defendants Root and Thomas are the Business Agent and President, respectively, of the Amalgamated Meat Cutters and Butcher Workers of America, Local Union No. 576. They arranged a meeting to which plaintiff's butchers were invited for the purpose of inducing them to join the union. Fifteen of the nineteen butchers attended. They voted twelve to three against joining. Despite the result of the vote, defendants attempted to obtain from plaintiff a closed shop contract with their union. Defendants also demanded that plaintiff's executives use their influence to force their butchers into the union. Defendants threatened plaintiff that unless their demands were met they would cut off deliveries to and from plaintiff's stores, close their stores and put plaintiff out of business. There is testimony that defendants knew their demands were unlawful but told plaintiff "with a little support on our [plaintiff's] part, no doubt the boys could be persuaded to join." Plaintiff refused to sign the contract because defendants' union did not represent a majority of plaintiff's butchers and under the National Labor Relations Act plaintiff could not lawfully make the contract. Said act also prohibits plaintiff from encouraging its employees to join a particular union. Defendants concede plaintiff is subject to the act.

Upon plaintiff's refusal of defendants' demands defendants established a "recognized" picket line at all plaintiff's stores. The banner carried by the pickets incorrectly stated there was a strike, but there was no strike. A "recognized" picket line is one which has been sanctioned by the Central Trades Union, the Teamsters Joint Council, and the Building and Construction Trades Council. All labor unions of Kansas City respect a recognized picket line and its members will not cross it. As a result union truck drivers would

not deliver merchandise to plaintiff's stores, and plaintiff's truck drivers who are unionized would not deliver purchases from the stores. Thus practically all supply and delivery of merchandise was shut off. There was no violence.

Plaintiff filed a petition for an injunction to restrain the picketing on the ground it was being carried on for an unlawful purpose, namely to coerce plaintiff into signing a contract with defendants' union and to force plaintiff to coerce its butchers into joining defendants' union.

Defendants in their answer allege that the butchers employed by plaintiff's competitors are members of their union, and state "that refusal and failure of the plaintiff to contract with said Local Union as said other merchants in said industry do" gives plaintiff an economic advantage over its competitors. Defendants further state: "Defendant states that for all of said reasons, among others, it would be advantageous for said union and its membership for plaintiff to enter into contractual relations with the said union similar to those entered into by said other merchants, and for the workmen of the plaintiff to become members of the said union. Said defendants state that because the plaintiff refuses and fails so to do, and because the said workmen of the plaintiff refuse and fail to become members of the said union, the said defendants picketed the stores of the plaintiff and desire to continue to picket the stores of the plaintiff for the purpose of informing the public of the aforesaid conduct of the plaintiff and the failure and refusal of the said workmen of the said plaintiff to become members of the said union and causing customers and other members of the public to refuse to patronize and refuse to serve the plaintiff, and thereby placing economic pressure on the plaintiff and the said non-union workmen of the plaintiff, and to cause said workmen to become members of said union, and to cause the plaintiff to enter into such contractual relations with the said union."

"Said defendants do not desire to, and they will not continue to, aver in said picketing that there is a strike at any of the stores of the plaintiff."

After a hearing the trial court permanently enjoined defendants:

(a) "From making demand that plaintiff sign or enter into a collective bargaining or other agreement with defendants, or the Amalgamated Meat Cutters and Butchers Workmen of North America, Local Union No. 576, so long as the defendants and said local union do not represent the majority of the meat cutters and butchers in the employ of the plaintiff."

(b) "From requiring or attempting to require that plaintiff require persons employed by it as butchers or meat cutters, or other employees in plaintiff's meat department to join or become members of the said local union as a condition of their employment or continued employment by plaintiff."

(c) "From announcing, publishing or declaring that a strike is in effect at or about the premises of plaintiff's stores and places of business in Kansas City, Missouri, when such is not the case."

Plaintiff also sought an order enjoining defendants:

"From establishing any picket line or lines in and about plaintiff's stores or places of business which would affect, destroy or interfere with the receipt and delivery of merchandise to and from plaintiff's stores and places of business in the usual and ordinary course of business."

The trial court refused to enter such order, and plaintiff has appealed.

Plaintiff contends that the picketing as carried on was for an unlawful purpose and the injunction order should have covered it as well as the other actions which were enjoined. Defendants do not quarrel here with the injunction order which was entered, so the issues before us narrow down to the single one whether the picketing continued to be for an unlawful purpose.

In a memorandum opinion the trial court held the original picketing was for an unlawful purpose, but refused to enjoin it because it further held the defendants had renounced any intention of picketing for the purpose of obtaining a contract, and of picketing for the purpose of coercing plaintiff to force its employees to join the union. It found that defendants' present intention was to continue the picketing only for the purpose of informing the public that plaintiff's butchers were not union members.

Under the National Labor Relations Act some of the original purposes of the picketing were clearly unlawful because an employer subject to the act may not encourage or discourage membership in any labor organization, and may contract only with the representative of the majority. 29 U. S. C. A., secs. 158, 159. And see National Labor Relations Board v. Electric Vacuum Cleaner Co., Inc., 315 U. S. 685.

While peaceful picketing for lawful purposes has long been upheld in this state, still the rule is well established here that where the purpose of concerted action by labor is unlawful such action may be enjoined. Lohse Patent Door Co. v. Fuelle, 215 Mo. 421, 114 S. W. 997 (Boycott); Hughes v. Kansas City Motion Machine Operators, etc., 282 Mo. 304, 221 S. W. 95 (Picketing); Purcell v. Journeymen Barbers, etc., 234 Mo. App. 843, 133 S. W. (2d) 662 (Picketing). The most recent ruling of this court is Rogers v. Poteet, 355 Mo. 986, 199 S. W. (2d) 378 handed down several months ago.

Directly on the point is Sec. 794 of the Restatement of Torts: "An act by an employer which would be a crime or a violation of a legislative enactment or contrary to defined public policy is not a proper object of concerted action against him by workers."

However, we observe in passing that this court has also long recognized the connection between peaceful picketing and the constitutional guaranty of free speech. Marx & Haas Jeans Clothing Co. v. Watson, 168 Mo. 133, 67 S. W. 391. And see City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30.

Thus, the only question for decision is whether defendants have, in fact, renounced their unlawful purposes in picketing plaintiff's stores as the trial court found.

The determination of the purpose or object sought to be accomplished by picketing is one of fact.

The answer, as quoted from above, contains allegations which specifically assert a wrongful purpose under the facts of the case, namely that defendants picketed plaintiff's stores to force plaintiff to enter into a contract with the union. The answer also states the picketing is for the purpose of informing the public of plaintiff's conduct. What conduct? Clearly it must be plaintiff's refusal to bow to defendants' unlawful demands. True, the answer also states the picketing is for the additional purpose of informing the public of the refusal of plaintiff's butchers to join the union but the other allegations of the answer remain unchanged and uncontradicted and in effect admit the unlawful purpose.

In defendants' evidence there is some testimony that defendants desired to continue picketing for the purpose of informing the public that plaintiff's butchers are largely non-union. However there is also testimony that deliveries to and from plaintiff's stores were stopped for the purpose of putting economic pressure upon the plaintiff so that it in turn would force its butchers to join the union. But there is no evidence of any renunciation on the part of defendants.

Both the answer and the evidence do disclose that one of the purposes for the picketing is for giving information to the public. While we assume that purpose is lawful still when it is coupled, as it is here, with unlawful purposes, the fact one of several purposes is lawful does not make the picketing lawful. Picketing for both lawful and unlawful purposes is unlawful. See Restatement Torts, Sec. 796. Cf. Baush Machine Tool Co. v. Hill, 231 Mass. 30, 120 N. E. 188; Folsom Engraving Co. v. McNeil, 235 Mass. 269, 126 N. E. 479.

We find nowhere in the record before us, neither in any pleading nor in the evidence, any renunciation of the original purposes of the picketing, some of which the trial court found to be unlawful. Since the record shows some of the present purposes of the picketing are to coerce plaintiff, under the threat of closing its business, into taking actions forbidden by the National Labor Relations Act the picketing should have been enjoined as unlawful. We must take the record as the parties made it and as we find it. We may not read into it something it does not contain and which contradicts its express allegations.

■ We hold the trial court in making its injunction order should have enjoined defendants also from picketing to the extent requested by plaintiff.

We find support for this decision in a number of cases. A case most nearly in point on the facts and involving the same principle is R. H. White and Co. v. Murphy, 310 Mass. 510, 38 N. E. (2d) 685. The court found in that case the picketing was peaceful, and that all deliveries of goods to and from the employer's warehouse had been stopped by the picket line. The question was whether the constitutional guaranty of freedom of speech protects picketing when the purpose of the picketing is to force action which would be in violation of a State Labor Relations Act. The court held that such constitutional guaranty does not authorize picketing under such circumstances and since the picketing was for an unlawful purpose it was properly enjoined.

That case discusses the decisions of the Supreme Court of the United States which defendants have relied on here. We follow the holding of that case that those decisions are not authority in a case such as this one where the purpose of the picketing is unlawful. That court stated:

"The defendants have relied largely upon Thornhill v. Alabama, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093, Carlson v. California, 310 U. S. 106, 60 S. Ct. 746, 84 L. Ed. 1104, and American Federation of Labor v. Swing, 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855, in support of the contention that peaceful picketing though for an unlawful purpose is not itself unlawful, and may not be enjoined. We do not adopt this view, being of opinion that there is nothing in those cases to support the proposition that freedom of speech includes the right, by picketing, to persuade or induce an employer to violate the statute by engaging in an unfair labor practice, and thus to set at naught the declared public policy of the Commonwealth, the foundation of the statute itself. In none of these cases just referred to was the picketing carried on for an unlawful purpose. No statutory violations were involved in the Swing case. The issue there was whether 'the constitutional guarantee of freedom of discussion [was] infringed by the common law policy of a state forbidding resort to peaceful persuasion through picketing merely ■ because there is no immediate employer-employee dispute' page 323 of 312 U. S., page 569 of 61 S. Ct., 85 L. Ed. 855. All that was decided in that case was that such a policy did abridge the exercise of freedom of speech by peaceful picketing. The Thornhill case simply decided that a statute forbidding any person, without just cause, to go near or to loiter about any place of business for the purpose of, or with the intention of, influencing other persons not to buy from, deal with, or be employed at such place of business; or to picket a place of lawful business for the purpose of impeding, interfering with or in-

juring such business, was invalid on its face, since freedom of speech embraces at least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. In that case the only statute that was alleged to have been violated was thus held invalid. In the instant case it has not been contended that the State Labor Relations Act is invalid in any of its provisions. In Senn v. Tile Layers Protective Union, 301 U. S. 468, 57 S. Ct. 857, 81 L. Ed. 1229, a statute was involved which permitted peaceful picketing in the street, without intimidation or coercion, fraud, violence or breach of the peace or threat thereof, and the statute was held consistent with the Fourteenth Amendment of the Federal Constitution. The court, however, stated that without special statutory authority members of a union might make known the facts of a labor dispute 'for freedom of speech is guaranteed by the Federal Constitution,' but the court also said: 'The statute provides that the picketing must be peaceful; and that term as used implies not only absence of violence, but absence of any unlawful act.' Pages 478, 479 of 301 U. S., page 862 of 57 S. Ct., 81 L. Ed. 1229. It thus appears that the Thornhill, Carlson and Swing cases are distinguishable in the fact that in none of them did it appear that the picketing was in violation of any valid statute or ordinance or that it was for an unlawful purpose. Nor does it appear from an examination of Miller's, Inc. v. Journeymen Tailors Union Local No. 195, 128 N. J. Eq. 162, 15 A. 2d 824, reversed, per curiam, sub nomine Journeymen Tailors Union Local No. 195 v. Miller's, Inc., 312 U. S. 658, 61 S. Ct. 732, 85 L. Ed. 1106, that the picketing was for an unlawful purpose. In that case the injunction was granted solely on the ground that there was not a labor dispute since no controversy existed between the employer involved and his employees. We are of opinion that none of the cases relied upon by the defendants, which we have already discussed, is authority for any principle that picketing by workmen in concert to persuade or induce an employer to do an unlawful act, one condemned by statute as an unfair labor practice and contrary to the defined public policy of the Commonwealth and of the nation, is permissible under the constitutional guaranty of freedom of speech, or otherwise.''

Peaceful picketing for unlawful purposes has been enjoined in the following cases: Silkworth v. Local No. 575, etc., 309 Mich. 746, 16 N. W. (2d) 145; Retail Clerks Union, etc. v. Wisconsin Employment Relations Board, 242 Wis. 21, 6 N. W. (2d) 698; Burlington Transp. Co. v. Hathaway, 234 Iowa 135, 12 N. W. (2d) 167; Fashioncraft, Inc., v. Halpern, 313 Mass. 385, 48 N. E. (2d) 1; Wisconsin Employment Relations Board v. Milk & Ice Drivers, etc., 238 Wis. 379, 299 N. W. 31; Markham & Callow, Inc., v. International Woodworkers of America, etc., 170 Ore. 517, 135 P. (2d) 727; Lafayette Dramatic Productions v. Ferentz, 305 Mich. 193, 9 N. W. (2d) 57. See Prosser

on Torts, sec. 105; Teller, Labor Disputes, sec. 114. But compare Park & Tilford Import Corp. v. International Brotherhood of Teamsters, etc., 27 Cal. (2d) 599, 165 P. (2d) 891. We find Yoerg Brewing Co. v. Brennan, 59 F. Supp. 625 is not in point because it involves the right of employees to strike which right is held to be protected in the National Labor Relations Act.

There is a statement in Bakery & Pastry Drivers, etc., v. Wohl, 315 U. S. 769, dictum to be true, that a state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual.

In the cases cited above where peaceful picketing for unlawful purposes was enjoined, the injunction was against picketing in its entirety. But plaintiff does not seek such an order in this case. The order it is seeking would not prevent or hinder defendants from exercising their right of free speech in informing the public that plaintiff's butchers are not union members.

We hold the trial court should have also entered the order enjoining picketing to the extent sought by plaintiff along with the other orders which were entered. In Rogers v. Poteet, 355 Mo. 986, 199 S. W. (2d) 378, supra, we held an order of somewhat similar effect should be entered.

Accordingly, the judgment is *reversed* and the cause *remanded with directions* to the trial court to proceed in conformity with this opinion. All concur.