## TEXAS STATE OPTICAL v. OPTICAL WORKERS UNION 24859 et al.

### No. 4892.

Court of Civil Appeals of Texas. Beaumont.
April 2, 1953.

Rehearing Denied April 22, 1953.

Cecil, Keith & Mehaffy, Beaumont, for appellants.

Mullinax & Wells, Dallas, for appellees.

WALKER, Justice.

This appeal is by the plaintiffs, from an order of the trial court denying them a temporary injunction against the defendants' picketing of their office and place of business in Beaumont, Texas.

Plaintiffs are Drs. S. J. Rogers and N. J. Rogers. They are optometrists who practice their profession in partnership with each other under the name of Texas State Optical. Only plaintiffs are members of this partnership. As an incident of their practice of optometry, plaintiffs sell eyeglasses to their patients.

The plaintiffs are brothers. They have two brothers whose names are Ben Rogers and Vick Rogers, and the said Ben Rogers and Vick Rogers are employees of the plaintiffs' partnership Texas State Optical.

The defendants will be referred to as the Union.

The Texas State Optical maintains 21 offices in 15 Texas cities, and one of these is located at 649 Orleans Street in Beaumont, Texas.

Two blocks away, at 861 Orleans Street, is the place of business of a concern named Rogers Bros., Wholesalers. This concern is also a partnership, and the four brothers, that is, the plaintiffs and Ben Rogers and Vick Rogers, are the members of this partnership. Rogers Bros. manufactures eyeglasses and the lenses for such glasses and sells them at wholesale only, and among their customers is the Texas State Optical. Texas State Optical had once owned and conducted the business now conducted by Rogers Bros., but had been divested of this business and Rogers Bros. had been created and vested with the business more than two years before the present suit was filed.

At all times material to the issues made on this appeal Rogers Bros. was engaged in a labor dispute with Union.

As an incident of this labor dispute with Rogers Bros., Union had established pickets, and apparently had since maintained them, at Rogers Bros.' place of business at 861 Orleans Street. This was done on September 10, 1952, and Union's right to establish these pickets is not questioned on this appeal.

Ten days later, on September 20th, after a letter to the plaintiffs which the plaintiffs did not answer and which is referred to hereinafter, the Union established pickets at the office of the Texas State Optical at 649 Orleans Street. None of the other offices of Texas State Optical has been picketed nor has any other customer of Rogers Bros.

Plaintiffs brought this suit to enjoin this picketing. The essence of their bill of complaint is that Union's picketing of them is a secondary boycott.

The union, however, answered that the picketing was an incident of another labor dispute which had arisen between Texas State Optical and Union. The subject matter of this dispute, as Union alleged it, was plaintiffs' discharge of certain employees, whose reinstatement by plaintiffs had been demanded by Union, and plaintiffs' refusal to recognize Union as a bargaining agent and to bargain with Union concerning wages and working conditions of employees in plaintiffs' Beaumont office.

The trial court has filed findings of fact, and according to Finding 19, the dispute alleged by Union was a sham and Union's object in picketing plaintiffs' Beaumont office was to coerce the plaintiffs into action affecting the conduct of Rogers Bros. in the latter's labor dispute with Union.

However, the trial court denied a temporary injunction because of certain testimony given by Dr. N. J. Rogers during the hearing. The trial court held that this testimony initiated a labor dispute between plaintiffs and Union.

## Opinion

1. The determination of this appeal is to be governed by the rule of decision stated in Southland Life Insurance Co. v. Egan, 126 Tex. 160, 86 S.W.2d 722.

2. Plaintiffs argue that whether the picketing was rightful should be determined by the object for which the picketing was begun and that if this object was wrongful, the picketing could not be validated by subsequent events. This argument seems to involve two contentions: first, that the right to temporary relief should be determined as of the date when the petition was filed and second, that if Dr. Rogers' testimony did initiate a labor dispute, the Union nevertheless adhered to their original object and their picketing was for this, or else was for two purposes, one rightful and the other not.

3. The right to temporary relief ordinarily is determined as of the time the trial court hears the prayer for that relief. See: Evans v. Santana Live Stock & Land Company, 81 Tex. 622 at page 625, 17 S.W. 232; Allen v. Abernethy, Tex.Civ.App., 151 S.W. 348; Ross v. Veltmann, Tex. Civ.App., 161 S.W. 1073; Easter Oil Corp. v. Wilbarger County, Tex.Civ.App., 30 S. W.2d 438; Polk v. Holland Texas Hypotheek Bank, Tex.Civ.App., 66 S.W.2d 1112, at page 1116 (Hn. 6); Doughty v. De Fee, Tex.Civ.App., 152 S.W.2d 404, at page 409 (Hn. 14); Davis v. Upshur County, Tex. Civ.App., 191 S.W.2d 524; 28 Am.Jur. 201 (Sec. 8); 43 C.J.S., Injunctions, §§ 29, 198, 217, pp. 460, 912, 955. And if the picketing were solely for a lawful object when the trial court acted, we think this rule of decision should have been applied. The first branch of plaintiffs' argument is accordingly overruled.

4. However, the picketing of plaintiffs' Beaumont office, if originally wrongful, was not validated by the events after plaintiffs filed their suit.

In their answer, after alleging the dispute with Texas State Optical, Union alleged further that "they will cease their picketing immediately upon plaintiffs' agreement to reinstate the employees named—and to recognize defendant Union and bargain collectively with said Union with respect to the wages, hours and working conditions of its employees at its Beaumont office."

On the hearing in the trial court, Dr. N. J. Rogers testified as follows under examination by Union's counsel: "Q. Are you willing to recognize this defendant Union and bargain with it for the employees of Texas State Optical at its Beaumont office? A. I don't believe I quite got it. I don't quite understand the meaning of the question. Am I willing to recognize the Union? Will you read the question? (The question is read—) A. No." The finding that a labor dispute between Union and plaintiffs had been initiated is based on this testimony.

We leave open the question, raised by this procedure, whether the requirements stated in North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065, were met.

Picketing in labor controversies must be referable to and supported by a lawful dispute. See, for example, Construction & General Labor Union, Local No. 688, v. Stephenson, 148 Tex. 434, 225 S.W.2d 958. If it be assumed that Dr. Rogers' testimony did initiate a labor dispute, and if it be assumed further that the original object of the picketing was wrongful, there is nothing before us to show that this original object either had been or would be renounced or that the resolution of this new labor dispute would become an object of the picketing. Under the circumstances, this new dispute was no more than a ground for future action which Union might or might not take.

We hold, therefore, that the order of the trial court is not supported by the ground on which that court acted, and we are brought to consideration of the second branch of plaintiffs' argument.

5. Union assigns error under Counter Point 4 to the sufficiency of the evidence to support finding 19 that Union did not begin the picketing of plaintiffs' Beaumont office in good faith and that this picketing was "a part of a concerted plan to coerce customers of Rogers Bros."

As we construe the evidence, it shows that Union did have a labor dispute with the plaintiffs before the picketing began. The organizing of employees of plaintiffs and Rogers Bros. seems to have begun about April 1, 1952. By letter dated June 2, 1952, Union asserted authority to represent a majority of the employees in plaintiffs' Beaumont office and requested recognition as bargaining agent for these employees. Plaintiffs did not reply to this letter. In June after this letter was sent, four of plaintiffs' employees working in their Beaumont office were discharged, and by letter dated September 15, 1952 (five days after the picketing of Rogers Bros. began) Union reminded plaintiffs of the letter of June 2nd, demanded reinstatement of the discharged employees, and requested a meeting at which this reinstatement could be arranged. Plaintiffs did not reply to this letter. It was not until five days later

that plaintiffs' Beaumont office was picketed. In the meantime, the discharge of the employees and other matters pertaining both to Rogers Bros. and to Texas State Optical were discussed at meetings of the Union members, and action against these concerns was requested of the Union's leaders, but the latter advised delay. The trial court has found that plaintiffs discharged the particular employees for cause, but at Union meetings these employees themselves seem to have been of another mind.

The only evidence that Union's object in picketing plaintiffs' Beaumont office was to coerce action by plaintiffs against Rogers Bros. consists first, of the circumstance that Union's dispute with Rogers Bros. was in progress throughout the period in which occurred the various events involving Texas State Optical, their employees, and Union, and, second, testimony that an agent of the Union made statements of intention to picket Texas State Optical if Rogers Bros. was picketed. The first circumstance is at least ambiguous. Since the two concerns were family partnerships and the same persons were involved in each a layman, or even a lawyer, might well have treated the disputes with each as interdependent; and there is evidence that the question, whether the two concerns were really only one was discussed at a meeting, or meetings, of the Union and that Union's agent thought the concerns were really only one when he began his activities in behalf of Union. As for the threats to picket Texas State Optical if Rogers Bros. were picketed, the testimony is either in general terms showing an intention to picket Texas State Optical, without specifying any office or offices, or else shows an intention to picket all or several of plaintiffs' offices. Dr. N. J. Rogers construed the statement to him on July 17th as showing an intention to picket all offices of the Texas State Optical. The evidence showing some of these statements of intention to picket shows that the particular statements were made at a time when the agent of the Union thought the two concerns to be really only one. Thus Boutte, plaintiffs' witness and an employee of Rogers Bros. and a

former member of the Union testified: "He said that they would probably put up a picket line there, that they were one and the same company." He testified further that the Union's agent made these statements "when the Union first got organized", and "I believe it was in April they started organizing." He testified further that the statements were made before plaintiffs' discharge of Robins (who, according to Finding 7, was discharged on June 5th) and "before the strike vote." However, there was evidence that some of these statements of intention to picket were made *after* the agent of the Union learned that the two concerns were separate concerns. That of July 17th to which Dr. N. J. Rogers testified was made after the agent learned that fact.

It is to be noted that none of the statements attributed to the Union's agent expresses an intention to picket only the plaintiffs' Beaumont office, and further, that no other office of the plaintiffs has been picketed. Picketing only one office of 21 is not a performance of a threat to picket all or more than one of the 21. In one sense, it is a performance of a threat in general terms to picket Texas State Optical, and in another sense it is not; and in determining the nature of Union's object it is to be borne in mind that the place picketed is also the office of Texas State Optical at which the dispute claimed by Union to be with the latter actually centers, and has its location on the ground. Union's letters to plaintiffs express only the desire to bargain for employees in plaintiffs' Beaumont office and to have discharged employees reinstated in that office.

■ We conclude that the evidence does not support a finding that the Union's object in picketing plaintiffs' Beaumont office was a sham. However, it may be sufficient to show that the picketing was expected, and thus intended, to affect the action of both Texas State Optical and of Rogers Bros., Wholesalers, and we will, therefore, consider the legal effect of this double motive. The facts following are to be considered with those already stated.

It was for reasons of economy and efficiency in administration, entirely unrelated

to Union's controversy with Rogers Bros. and with plaintiffs, that Texas State Optical divested themselves of the business of manufacturing lenses and eyeglasses and of selling these products at wholesale, and vested this business in the new partnership Rogers Bros., Wholesalers. The division occurred more than two years before this suit was filed, and long before Union's controversies with these concerns began. It involves no imposition upon anybody.

Rogers Bros.' only place of business is in Beaumont, at the address on Orleans Street which has been stated, and this, as we have said, is about two blocks from plaintiffs' Beaumont office and on the same street.

Each concern has its own books of account and pays its own employees. The trial court has found that "Rogers Bros., Wholesalers, and Texas State Optical operate joint administrative, clerical and accounting offices at 861 Orleans St. (the address is erroneous; the office is at 860 Orleans Street, across the street from No. 861) where the four Rogers brothers maintain offices." Dr. N. J. Rogers testified: "Q. Is that the same place where you, Ben, S. J., and Vick Rogers, all four of you, have your headquarters, there at 860 Orleans? A. Yes."

The trial court found that "each of the four Rogers brothers above named is active in the business" of Rogers Bros., Wholesalers, and of Texas State Optical. Dr. N. J. Rogers testified that he and Dr. S. J. Rogers owned Texas State Optical and that Ben Rogers and Vick Rogers were their employees. He did not describe the duties of Vick Rogers, but he said that Ben Rogers acted in an executive and administrative capacity, and his testimony refers to Ben Rogers' greater familiarity with Texas State Optical's dealings with a state agency. We infer that Vick Rogers also performed duties of an executive nature.

Ben Rogers and Vick Rogers are more active in the conduct of the affairs of Rogers Bros., Wholesalers, and, of the four partners in that concern, have primary charge of that concern's business, including the hours of work, the wages, and the working conditions of the firm's employees. Having a better acquaintance with the concern's business, the judgment of these two partners is deferred to by the plaintiffs; but all four brothers are equal partners, and the plaintiffs also participate in the conduct of the business of Rogers Bros. Dr. N. J. Rogers said that he served in an advisory capacity and that his duties were: "The operating function and the advisory standpoint, primarily in the operation of Rogers Bros. business, the Rogers Brothers laboratory and whatever other business they engage in." He said that the plaintiff Dr. S. J. Rogers also acted as an advisor "except that he is more directly responsible for some equipment purchases and maintenance and repairs to Rogers Brothers."

Dr. N. J. Rogers had participated in Union's labor dispute with Rogers Bros. He said that he had been consulted by Ben Rogers and Vick Rogers about this matter "on several occasions, but I don't know the exact number."

Dr. N. J. Rogers said that he and his co-plaintiff Dr. S. J. Rogers had charge of labor relations at Texas State Optical, and that after consultation with their office manager they had authorized this person to discharge the employees whose reinstatement Union had demanded. However, Ben Rogers and Vick Rogers also have something to do with Texas State Optical's labor relations. Dr. N. J. Rogers testified: "Q. So I gather with regard to Texas State Optical there is the same consultation about labor relations that there is among the Rogers Brothers Wholesalers? A. No, sir, only to the extent of mechanics. There are many details with regard to the Texas Unemployment Commission that Ben Rogers happens to be more familiar with than I am, and I have discussed the mechanics, but that is the extent of it, sir."

Rogers Bros., Wholesalers, sold their product to many purchasers.

One of the concerns which purchases lenses from Rogers Bros. is Texas State Optical. At the plaintiffs' Beaumont Office, optometrists (Dr. N. J. Rogers said that five of these were in this office) prescribed eyeglasses, that is, lenses, for patients and nearly all of these prescriptions were filled at Rogers Bros. Dr. N. J.

Rogers' testimony implies that Rogers Bros. made all lenses for which they had facilities of manufacture, and that lenses which they were not equipped to make were made by other concerns. He said: "We send it primarily to Rogers Brothers Wholesalers. We have had work done at American Optical Company here in Beaumont because of various reasons that one laboratory may be able to turn out a particular type lens that we are not able to grind." The trial court found that "over 90 per cent of the lenses dispensed by Texas State Optical at Beaumont are purchased from Rogers Bros., Wholesalers." As we construe the finding of fact quoted, Finding 19, and the testimony of Dr. N. J. Rogers, prescriptions are filled for Texas State Optical, not for the patient for whom the prescription is made. The purchase of the lenses is made by Texas State Optical and the latter concern then sells the lenses (or completed eyeglasses) to the patient at retail. We note from Dr. N. J. Rogers' testimony that at the Beaumont office of Texas State Optical were employees who fitted the glasses to the patient, and who made minor repairs upon glasses and who fitted lenses into frames. Thelma Cupp, one of the discharged employees, made such repairs and mounted lenses in frames.

Dr. Rogers' testimony shows that Rogers Bros. supplied lenses for other offices of Texas State Optical, but he said that he was unable to state what percentage of the lenses used in Texas State Optical's offices outside of Beaumont were supplied by Rogers Bros. He testified: "The reason as much high percentage is done in Beaumont is because of convenience to the Beaumont office."

We proceed to consider the legal effect of the double motive which may be attributable to Union in picketing plaintiffs' Beaumont office.

It has been held that if the picketing is for a lawful purpose and also for an unlawful object, it is wholly wrongful; and this rule of decision refers to immediate objects, not to the case where one object is immediate and the other remote. See: Fred Wolferman, Inc., v. Root, 356 Mo. 976, 204 S.W.2d 733, 174 A.L.R. 585; Cf.

Park & Tilford Import Corp. v. International Brotherhood, 27 Cal.2d 197, 165 P.2d 891, 161 A.L.R. 1426. We assume, without deciding, that this rule is applicable here.

If one of Union's objects in picketing plaintiffs' Beaumont office was to coerce action against Rogers Bros., the plaintiffs' argument invokes a rule of decision exemplified, perhaps, in: Back v. Kaufmann, 175 Misc. 169, 22 N.Y.S.2d 449; Brennan v. Eisen, 188 Misc. 672, 69 N.Y.S.2d 441, affirmed 272 App.Div. 799, 71 N.Y.S.2d 894; Jacobs v. Eisen, 272 App.Div. 946, 72 N.Y.S.2d 56; Tenzer v. Eisen, Sup., 104 N.Y.S.2d 561.

The facts, however, distinguish this appeal from those adjudicated by the New York courts and from the case where a third party retail merchant purchases the product of a manufacturer for resale to the public. Here, the plaintiffs, who are the partnership Texas State Optical, also are members of the partnership Rogers Bros., Wholesalers, and in that capacity have votes equal to those of the other two partners, Ben Rogers and Vick Rogers. Further, the plaintiffs actually participate in the conduct of the affairs of Rogers Bros. and at least one of them, the witness Dr. N. J. Rogers, has taken part, through consultation with his partners, in the labor dispute between Rogers Bros. and Union. On the other hand, the plaintiffs' two brothers who are their partners in Rogers Bros., charged primarily with conducting most of the affairs of that firm, work for plaintiffs as employees of the plaintiffs' partnership Texas State Optical, and assist them in conducting the affairs of that concern, which, there being 21 offices in 15 cities, must be extensive and important. At least one of these two brothers serving plaintiffs as employees, namely, Ben Rogers, but apparently both, have some connection with the labor relations of Texas State Optical. Further, the Beaumont office of Texas State Optical, which, having five optometrists, must be a busy office, procures from Rogers Bros. almost all of the eyeglasses prescribed for patients. This obviously represents a deliberate policy of Texas State Optical, since Dr. N. J. Rogers refers to other concerns who sometimes make lenses

for them. Each one of the four brothers participates in the income of the two partnerships, all four as partners in Rogers Bros. and two as partners and two as employees of Texas State Optical. In earning this income, they sell at Texas State Optical, not in a casual and incidental way but substantially to the full extent possible, the product they make at Rogers Bros.; and the income they make at Texas State Optical, either as a partner's profit or as an employee's salary, is affected by the cost of labor, as wages or as other benefits made available to employees at Rogers Bros. Their labor dispute at Rogers Bros. and their conduct of this dispute will necessarily, directly and immediately affect their conduct of their business and their income at Texas State Optical if that dispute materially affects the cost of their product at Rogers Bros. Whether this will happen or not the proof does not show; but changes in the price of Rogers Bros.' product will have an automatic repercussion at Texas State Optical.

Under all the circumstances, it must be held that while the two partnerships are separate concerns from an accounting standpoint and doubtless from other standpoints as well, they meet at the Beaumont office of Texas State Optical, and are at that office an economic unit for the manufacture and sale of eyeglasses. The Beaumont office of Texas State Optical, in a real sense of the word, functions as an instrumentality for Rogers Bros. in the sale of Rogers Bros.' product. There is in plaintiffs a power of control (not absolute but nevertheless substantial) over labor relations of Rogers Bros., an interest in those relations which concerns and affects them in their capacity as the partnership Texas State Optical, and also some participation by them in those relations; and the same thing, of course, may be said of plaintiffs' brothers Ben Rogers and Vick Rogers although their interest in the labor relations of Rogers Bros. as employees of Texas State Optical is not so great or immediate as is that of plaintiffs. But it is plaintiffs who complain of being picketed. We think that the Union in picketing plaintiffs is not conscripting a neutral; the plaintiffs, in their capacity as Texas State Optical and so far as their Beaumont office is concerned, are parties to Union's labor dispute with Rogers Bros.

We have found no cases in point on the particular facts, but the question is whether we have the right to disregard the formal separation of these two partnerships of plaintiffs and their brothers and the fact resulting that the employees of one partnership are in some legal relations (for instance, as creditors) not the employees of the other partnership, and the following decisions are suggestive: Wright v. Teamsters' Union Local No. 690, 33 Wash.2d 905, 207 P.2d 662; N. L. R. B. v. Federal Engineering Co., 6 Cir., 153 F.2d 233; N. L. R. B. v. Condenser Corp., 3 Cir., 128 F.2d 67; N. L. R. B. v. Lund, 8 Cir., 103 F.2d 815; N. L. R. B. v. Williams, 4 Cir., 195 F.2d 669. The facts in International Brotherhood etc., v. Missouri Pac. Freight Tr. Co., Tex.Civ.App., 220 S.W.2d 219, were somewhat stronger in behalf of Union than are the facts here since there both concerns operated at the same place. On the other hand, our conclusion in the Missouri Pacific Case that economic facts identify the parties and determine the limits of the controversy which Union has a constitutional right to publicize by picketing does have some application here; for their power to participate in the affairs of Rogers Bros. has economic consequences to them in their partnership Texas State Optical at their Beaumont office. The Supreme Court applied such a test in Construction & General Labor Union v. Stephenson, 148 Tex. 434, 225 S.W.2d 958, to determine that a labor dispute existed. In International Union of Operating Engineers v. Cox, 148 Tex. 42, 219 S.W.2d 787, 794, the court said: "In every case of justifiable picketing in labor cases an industrial dispute must exist, and the dispute must have a reasonable connection with the business picketed". The dispute involved in this appeal is confined to the same trade or industry; plaintiffs are professional men and various details of the practice of their profession are regulated by law but in their purchase and resale of lenses and eyeglasses, they enter the stream of commerce.

500

This dispute has a reasonable connection and an extraordinarily close economic connection with the business picketed. Indeed, this case is just one degree short of that where an individual makes a product in one building under one trade name and then sells it under another trade name in another building two blocks away.

Statutory construction is beside the point. Plaintiffs invoke provisions of Article 5154f, Vernon's Ann.Civ.St. and the anti-trust laws, but if those statutes apply to the facts now before us, this application would be an invasion of Union's right to free speech, granted by the 1st and 14th amendments to the Federal Constitution. See: Ex parte Henry, 147 Tex. 315, 215 S.W.2d 588, at page 594 (Hn. 2, 3).

These conclusions establish the validity of the order appealed from.

Plaintiffs' points of error are overruled, and the order of the trial court is affirmed.