## NATIONAL LABOR RELATIONS BOARD v. KATZ DRUG CO.

### No. 14782.

United States Court of Appeals
Eighth Circuit.

Sept. 17, 1953.

Thomas J. McDermott, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Frederick U. Reel, Atty., National Labor Relations Board, Washington, D. C., with him on the brief), for petitioner.

Lawrence R. Brown, Kansas City, Mo. (Myron K. Ellison, John K. Bestor and Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, Mo., with him on the brief), for respondent.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order issued by it against Katz Drug Company, 98 N. L. R. B. 867, and Katz asks that the order be set aside.

Katz is a corporation, operating a chain of retail stores in Missouri and surrounding states for the sale of drugs, household appliances and sundry other goods, and having a number of its largest stores located in St. Louis and Kansas City, Missouri.

On December 7, 1950, some representatives of the St. Louis Warehouse and Distribution Workers, No. 688, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. L., came to the office of the St. Louis stores and requested Katz to sign a contract recognizing the local union as the bargaining representative for all of Katz's St. Louis employees. Katz inquired whether the Union represented a majority of the employees. The spokesman answered that "we don't at the present time, but we will." Katz then merely stated that it could not lawfully sign such a contract with anyone who did not represent a majority of the employees. The next morning the Union threw a picket line around Katz's stores and warehouses, not only at St. Louis but at Kansas City as well, carrying banners inscribed as follows: "Katz Drug Company is non-union in St. Louis. Local No. 688, St. Louis."

The record is without any evidence whatsoever of union hostility on the part of Katz. It is without evidence of any history that Katz ever had manifested interest in whether its employees did or did not belong to a union. It is without any evidence that the employees themselves had had an interest in joining a union, or, if such a general interest might naturally be presumed, that the store clerks would for that reason desire to become members of a warehouse and distribution workers' union. It is with-out any evidence that any of Katz's employees were members of the picket line. In fact, the whole situation, as shown by the record, would tend to impress that the warehouse and distribution workers' local was simply trying to short-cut the question of what union, if any, the employees might desire to belong to, by forcing Katz to sign a contract with it and so putting the employees in the position of not having much choice of their own.

The Missouri state courts found, in proceedings which are immediately following discussed, that the picketing was an effort on the part of the Union to compel Katz to enter into a contract with it, notwithstanding that it did not represent a majority of Katz's employees, through an attempted disruption of Katz's Christmas-season business, by a discouraging of store patronage and a preventing of the delivery of necessary merchandise to and from the warehouses and stores. Under Missouri law, the picketing of an employer by a labor union, which does not represent a majority of the employees, for the purpose of compelling the employer to sign a contract recognizing the union as the exclusive bargaining representative for the employees, is unlawful and may be enjoined. See Fred Wolferman, Inc., v. Root, 356 Mo. 976, 204 S.W.2d 733, 174 A.L.R. 585, certiorari denied 333 U.S. 837, 68 S.Ct. 608, 92 L.Ed. 1122; Empire Storage & Ice Co. v. Giboney, 357 Mo. 671, 210 S.W. 2d 55, affirmed 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; State ex rel. Allai v. Thatch, 361 Mo. 190, 234 S.W.2d 1; Kincaid-Webber Motor Co. v. Quinn, 362 Mo. 375, 241 S.W.2d 886; Katz Drug Co. v. Kavner, Mo., 249 S.W.2d 166.

On the day the picketing began, December 8, 1950, Katz went into the state court at Kansas City, where the general headquarters of the corporation were located, and obtained a restraining order against the Union's picketing as being unlawful in the situation and irreparable in its consequence, with hearing upon the application for a temporary injunction being set by the court for December 13th.

On December 9th, the union representative once more called upon Katz and in his conversation again admitted that the Union did not represent a majority of the employees. He did not offer, however, so to stipulate for purposes of the injunction hearing, nor did he make any suggestion otherwise that the Union would not require Katz to assume the burden of evidentially establishing this fact as a foundation for the injunction which it sought.

In order to be able to make a showing sufficient under Missouri law for a temporary injunction, Katz's attorneys drew up a general affidavit form for presentation to and execution by the St. Louis employees. The affidavit contained a recitation that the person executing it was an employee of the Katz Drug Company in St. Louis, at the store whose location was described; that he or she was not a member of Warehouse and Distribution Workers Union, Local 688, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, A. F. of L.; that he or she had not authorized said Union to represent him or her for the purpose of collective bargaining; and that said Union did not represent him or her for the purpose of collective bargaining or for any other purpose.

To safeguard against the semblance of any color of intent to coerce or persuade, the attorneys instructed Katz's officers to merely give the affidavit forms to the employees individually, ask them to read the form and sign it or not sign it, as they wished, and say nothing more. This instruction was scrupulously observed. And, on the hearing before the Board, both the General Counsel for the Board and the attorney for the Union stipulated as a fact that in the taking of the affidavit there had been no "subjective intent to interfere, restrain or coerce the employees * * * in their rights guaranteed under Section 7 of the Act", 29 U.S.C.A. § 157.

At the time the application for temporary injunction was to come up for hearing, Katz's attorneys held 380 such affidavits from the St. Louis employees. The Union—either to avoid evidential emphasis of this weakness of its position or for other reason—came in just before the hearing and filed a pleading admitting that it did not represent a majority of the employees but seeking to have the injunction denied on other grounds. Use of the affidavits therefore became unnecessary to establish the Union's lack of legal capacity to serve as general bargaining representative for the employees. The court held that the Union's purpose of forcing Katz to sign an agreement with it recognizing it as the bargaining agent of the employees, when it did not represent a majority of them, made the picketing unlawful and that Katz was accordingly entitled to an injunction. The Missouri Supreme Court affirmed, Katz Drug Co. v. Kavner, 249 S.W.2d 166.

After the entry of the injunction against it, the Union went to the National Labor Relations Board with a charge that, in taking the affidavits from its employees, Katz had been guilty of an unfair labor practice, in that the statement in the affidavit form that the person executing it was not a member of Local No. 688 and had not authorized the Union to represent him or her constituted an interrogation of the employees as to their union membership and so amounted to an unlawful interference with the employees' right, under 29 U.S.C.A. § 157, "to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection". The Board issued a complaint on the Union's charge.

Hearing upon the complaint was held before a trial examiner, who filed a recommendation that the complaint be dismissed, on the ground that Katz, in taking the affidavits, had simply engaged in making legitimate and good-faith preparation for the trial of its injunction suit, within the right of any employer, as recognized by the Board itself in Joy

Silk Mills, 85 N.L.R.B. 1263, and previous cases, to make interrogation of its employees for purposes of and within the issues raised by a complaint in some pending proceeding.

The Board, however, by a decision of three of its members, with a fourth member dissenting, rejected the trial examiner's recommended decision, and held instead that Katz was guilty of unfair labor practice, "by soliciting these affidavits in the manner set forth above ['it gave its employees no explanation of any nature,' said the Board; 'it merely asked them to sign or not, as they wished'] and in view of the Union's admission that it did not, in fact, represent a majority of the employees" (brushing aside the considerations pointed out by the trial examiner, that "counsel could not reasonably have been expected to rely upon out-of-court declarations of a union representative as a method of proving the principal point in its case;" that while the Union, in its appearance in court on December 13th, again admitted that it did not represent a majority of the employees, Katz "had no sure foreknowledge that it would do so;" and that "to meet the eventuality of the Union's asserting otherwise, it was incumbent upon counsel in preparing their case to support the petition for an injunction by proper evidence.").

The prior decisions of the Board had declared generally that "an employer is privileged to interview employees for the purpose of discovering facts within the limits of the issues raised by a complaint, where the employer, or its counsel, does so for the purpose of preparing its case for trial and does not go beyond the necessities of such preparation to pry into matters of union membership, to discuss the nature or extent of union activity, to dissuade employees from joining or remaining members of the union, or otherwise to interfere with the statutory right to self-organization." May Department Stores Company, 70 N.L.R.B. 94, 95. See also N & W Overall Company, Incorporated, 51 N.L.R.B. 1016; Richard F. Kline, 39 N.L.R.B. 1047; Joy Silk Mills, supra, 85 N.L.R.B. 1263, enforced 87 U.S.App.D.C. 360, 185 F.2d 732.

We agree with the trial examiner and the dissenting member of the Board that there was here no basis for holding Katz guilty of unfair labor practice in what it did.

The Labor Management Relations Act, 29 U.S.C.A. §§ 151 et seq., was not intended to preclude or obstruct the obtaining of evidence for judicial proceedings. Nor does it vest any authority in the National Labor Relations Board to prescribe, in relation to suits to prosecute or defend justiciable rights, what evidence the courts are entitled to receive or the parties are entitled to present, just because the suit is one between an employer and an employee or an employer and a labor union—as the Board in effect did here by its declaration that it was not "necessary to the Respondent's injunction proceedings pending in the Missouri Courts" to obtain or offer affidavits from the employees to establish that the Union did not represent a majority of the employees, in view of there having been a previous out-of-court admission by some representative of the Union that this was the fact.

The Board manifestly is obligated to recognize the fundamental right and duty of the courts to perform their judicial function and to do so on the basis of their own established traditions, standards, processes and methods, except where some express limitation has legislatively been imposed thereon. And so the Board necessarily must make a reasonable and practicable reconciliation between the purposes of the Labor Management Relations Act and its lack of intent to interfere with the administration of justice in other rights.

It cannot therefore be said, as the Board purported to do here, in footnote 6 of its decision, that any inquiry whatever by an employer of an employee as to his or her union membership is

"unlawful per se," as constituting an intrusion "into an area guaranteed by the Act as the exclusive concern of employees," and so attempting to violate an absolute privilege of the employees. No such privilege exists in relation to judicial proceedings, and any legally proper evidential interrogation, as a matter of competent affidavit, deposition or witness-chair testimony, within the issues of the case and wholly for purposes thereof, cannot be held to be an unfair labor practice under the Act, no matter what its incidental consequences, if any, may chance to be. And the Board can no more undertake to impose qualifications in judicial proceedings for the taking of an employee's affidavit or deposition or the calling of him to the witness stand than, as previously discussed, it has any right to say what evidence the courts are entitled to receive or the parties are entitled to present in such a proceeding. Of course, no litigant has the right to abuse legal situation and judicial process. An employer or its counsel cannot therefore undertake to use a judicial proceeding and its incidents as a weapon or as a shield for saying and doing things not reasonably necessary to the effecting of proper disposition of the justiciable controversy involved, measured by the test of fitting sense of suitor and counsel responsibility in the immediate situation. And if such extravagances are indulged in, of such a nature as to indicate a designed attempt to reach into the field of and serve a purpose in relation to the Labor Management Relations Act, or as to be capable generally of serving only such a purpose, the employer's actions in the judicial proceeding are not beyond the provisions of the Act.

But here, clearly, the employer's manifest legal precaution to avoid any semblance of color of persuasion or coercion in the taking of the affidavits, and the stipulation that there had been no intent to coerce, restrain, or interfere with the employees' rights under the Act, leave no reasonable room legally to say that any violation of the Act was committed, in the proper relationship of the Act to the judicial proceeding.

As a matter of fact, even if there had been any legal basis in the situation for the Board to make a determination on the merits of whether the failure of Katz to tell the employees for what purpose the affidavits were wanted was likely in the situation to leave an employee with "natural fears" that "his election not to sign would bring swift economic reprisal," we are not able to agree with the Board that such a conclusion was reasonably warranted on the record.

In the first place, on the circumstances shown by the record, it would not be consistent with normal human intelligence that the employees of Katz's large drug stores, in the metropolitan city of St. Louis, seeing a picket line of a union suddenly appear, and as suddenly disappear, and thereafter remain away, did not know for what purpose the affidavits were to be and had been used. In the next place, such direct evidence as there is in the record shows, not that they did not know, but rather that they did know. The Board called two employee-witnesses to show how the affidavits were taken, and a stipulation was then made that, if the approximately 378 other employees were called, "they would also testify to the same effect as the two witnesses already called by the General Counsel." One of the two witnesses was not asked whether she knew what the purpose of the affidavits was but merely whether Katz had told her. The other witness, however, when asked by the trial examiner whether he was told why the affidavits were wanted, replied, "I knew that"—as certainly he naturally could be expected to know, in the setting of the events which had occurred. But beyond what has been said, even if Katz had told the employees why the affidavits were wanted, as the Board held should have been done to escape a charge of unfair labor practice, it could hardly realistically be said, we think, that an employee would have any less fear of economic reprisal from his refusal to sign an affi-

davit to help Katz in its injunction proceedings than he would from his refusal to sign such an affidavit generally.

The petition of the Board for enforcement of its order is denied and the order is set aside.